1824.
June.

Barney
vs
Patterson

BARNEY *vs.* PATTERSON's Lessee.

APPEAL from *Baltimore* county court. Ejectment for a lot of ground in the city of *Baltimore.* Plea, *non cul.*

1. At the trial the plaintiff, (now appellee,) having deduced a title to the lot in dispute down to *Aquila Brown,* gave in evidence, that *Brown,* being largely indebted to the United States, had removed from this state, (where he had before resided,) sometime in the year 1802, and had for several years last past resided in some part of *Europe,* and that the United States caused and procured process of attachment to be laid upon said lot, as the right and property of said *Brown,* and certain proceedings and judgment thereon to be had in the circuit court of the *United States* for the Maryland District, and also a *fieri facias* to be issued from said court on that judgment, and levied

The petition, commission, and other proceedings before commissioners of bankruptcy, and their judgment thereon, are not evidence for the purpose of showing that a person had become and had been declared a bankrupt under the provisions of the act of congress

The Circuit Court of the *United States* has jurisdiction and authority to award an attachment, under the act of 1715, *ch* 40, on the return of two *non ests* to writs of *capias ad respondendum,* sued out in the name of the *United States,* against the goods and chattels, lands and tenements, of a defendant, whether he be in *fact* a resident of the state or not. *(and note.)*

An attachment will lie against the property of foreigners, whether they have been residents within the state or not. *(and note.)*

As proof of the cause of action to warrant the issuing an attachment in the name of the United States, a bill of exchange, drawn by the defendant, and payable to J C. and by him endorsed to T T, the treasurer of the *U S,* as their agent, and to and for their use, and duly protested for nonacceptance and for nonpayment, was with protest for nonacceptance filed in court, and it being stated that the U S had complied with the law, and had made proof of their damages, &c —Held to be sufficient

An attachment under the act of 1715, *ch.* 40, may be awarded against the *lands and tenements,* as well as the goods, &c. of the defendant

Under the construction given to the statute of 5 *Geo.* II, *ch.* 7, lands became liable to be taken and sold by *fieri facias,* in the same manner as goods and chattels, and are subject to attachment

An attachment ought regularly to issue as of the term at which it was awarded; and it is the duty of the sheriff to serve the *scire facias* in the attachment on the persons who are found in possession of the property attached, and to certify such service; or if the property is unaccupied, to make a corresponding return

Although the intervening of a term before the issuing of an attachment which is awarded, and the negligence of the marshal in not serving the *scire facias* in the attachment, &c and making his return in conformity thereof, are irregularities in the proceedings of the circuit court offered in evidence, yet the judgment of condemnation is not therefore void, that court being a court of record of competent jurisdiction, from whose decisions an appeal or writ of error lies to the supreme court

It is not like the case of special and extraordinary powers given by statute to a court which has no jurisdiction independent of such statute

The proceeding by a yachment is only a process to compel the appearance of a defendant whose *person* cannot be reached by the process of the court; and is not a proceeding in derogation of the *principles* of the common law, but rather in mitigation of the severity of the common law in favour of defendants

Foreign judgments are not conclusive, but are always examinable, where the parties claiming the benefit of them apply to the courts of this country to enforce them. But such judgments when coming incidentally in question, have the same force and effect as domestic judgments

A judgment of the circuit court of the *U S,* if treated as the judgment of a foreign tribunal of competent jurisdiction, stands upon the same footing, when offered in evidence, as a domestic judgment, and is not liable to be impeached for any irregularity, though such irregularity would be a sufficient ground for reversal in an appellate court

A judgment of the circuit court of the *U S* is not to be treated as a foreign judgment

The doctrine that judgments and decrees are only evidence in suits between parties and privies, is not applicable where such judgments are introduced, not as binding *per se,* but only as documents connected with the chain of a plaintiff's title in ejectment

Where there is a subsisting judgment by a court of competent jurisdiction, a *fieri facias* thereon clothes the sheriff with authority to sell, and if the judgment be afterwards reversed, the title of the purchaser will not thereby be defeated

If the return to a *fieri facias* does not set out the name of the purchaser, and there is no description given of the property sold, it might perhaps be set aside on motion. But it is not the return of the sheriff that gives title to the purchaser, but the previous sale

As a sheriff's sale of land is within the statute of frauds, some memorandum in writing is necessary. It is therefore right and proper, that there should be a special return of the *fieri facias,* particularly describing the premises, and setting out the name of the purchaser; either of which, though not operating to pass the title, would be safe and competent evidence of the sale

upon said lot. A record of this attachment, proceedings, judgment and *fieri facias*, the plaintiff offered in evidence. By the record it appeared, that an action on the case was brought in the circuit court of the *U. S.* for the fourth circuit in and for the District of *Maryland*, by the *United States* against *Brown*, on the 24th of September 1816, and the writ of *capias ad respondendum*, which then issued returnable on the 7th of November then next, was returned *non est*; that an *alias* writ of *capias ad respondendum* was issued on the 17th of March 1817, returnable on the 1st of May following. On that day the last mentioned writ was also returned *non est*, and a declaration in the usual form was then filed on a bill of exchange, dated at *Baltimore* on the 22d of December 1801, drawn by *Brown* on Messrs. *Van Staphorst* & Co. at *Amsterdam*, for 60,000 guilders, *Holland* currency, payable 60 days after sight to the order of *James Clarke*. The bill was endorsed by *Clarke*, payable to *Brown* and *Hackeman*, or order; and by them endorsed to *B. Owings*, or order, who endorsed it to *T. Tucker*, treasurer of the *United States*, and agent of the *U. S.* and to and for the use of the *U. S.* The bill not being accepted was, on the 16th of March 1802, protested for nonacceptance and not being paid, on the 19th of May 1802, was protested for nonpayment. The *United States* filed in court the bill of exchange, and protest thereof for nonacceptance; and on the prayer for a writ of attachment against the lands, &c. of *Brown*, according to the act of assembly of this state, &c. to attach for them to the value of their damages and costs; and it appearing to the court, that the *United States* had complied with the law as alleged, and having made proof to the court of their damages to the amount of \$58,201 71, a writ of attachment was awarded against the lands, &c. of *Brown*, in the usual manner. (2 *Harr. Ent.* 78.) On the 2d of April 1818, a writ of attachment against the lands, &c. of *Brown*, was issued in the usual form of an attachment on judgment after two *non ests*, with a clause of *scire facias*, &c. (*2 Harr. Ent.* 612,) returnable on the 1st day of May ensuing. On that day the marshal of the district made this return of the attachment, viz, "4th April 1818, attached and appraised as per schedule." The schedule stated that the lands and tenements of *Brown* had been seized and taken by the marshal by virtue of the writ of attachment, and being ap-

praised by four appraisers, &c. were as follows, viz. "A lot on *Market Street* in the city of *Baltimore*, fronting on said street about 66 feet, and about 166 feet deep to *Cowpen Alley*, having a three story brick house, and a two story frame store thereon, viz. 66 feet front, estimated at \$300 per foot, \$19,800." Then follow other lots and improvements, with their value. This appraisement was signed and sealed by the appraisers. *Brown*, although solemnly called, did not appear, and on the prayer of the *United States* the lot and premises above described were condemned to satisfy the *United States* the damages and costs aforesaid, security being given in the usual manner. (*Harr. Ent.* 83.) Upon this judgment of condemnation a writ of *fieri facias* issued on the 19th of May 1818, directed to, and commanding the marshal of the district, that of the lands and tenements above described and condemned, he should cause to be made and levied the damages and costs aforesaid, to render to the *United States*, &c. on the 7th of November then next. At the return day the marshal made this return of the writ of *fieri facias*. "I hereby certify to the Circuit Court within mentioned, that by virtue of the within writ to me directed, I have caused to be made, of the lands and tenements of the within named *Aquila Brown*, the sum of \$16,104 84, current money, which I have here ready to render to the within named *United States*, in part of the damages, costs and charges, in the said within writ specified. So answers," &c. The plaintiff further gave in evidence, that *Paul Bentalou*, esquire, the marshal of said District of *Maryland*, to whom said writ of *fieri facias* was directed, after having levied the same upon the said premises, gave this notice by advertisement of the sale of said premises: "*Marshal's sale.* By virtue and in pursuance of a writ of *fieri facias*, from the Circuit Court of the *United States* for the fourth circuit, in the District of *Maryland*, to me directed, will be sold at public auction, for cash, on the premises, at four o'clock in the afternoon, on Monday the 8th June next, the following valuable property, situated on the north side of *Baltimore St.* between *Howard* and *Eutaw Streets*, and running back to *Cowpen Alley*, to wit. 1st. The lot with the three story dwelling, and all the improvements thereon, formerly occupied by the late Judge *Nicholson*, and now by Mr. *John Barney*, fronting *Baltimore Street* about 33 feet, and

running back about 166 to *Cowpen Alley*. 2d. The adjoining lot, with a frame warehouse thereon, formerly occupied by Messrs. *Hollingsworth* and *Sullivan*, and now by Mr. *Abraham Buckwalter*, as a flour store, having, as the foregoing, 33 feet front on *Baltimore-Street*, and running back about 166 feet to *Cowpen Alley*; which said lots and tenements have been levied upon, and are to be sold towards satisfying a claim of the *United States*, in virtue of judgments of the aforesaid court against *Aquila Brown*, late of *Baltimore*, merchant. On the full payment of the purchase money, deeds conveying all the right acquired by the *United States* to the aforesaid property, will be executed by 　　　　　　　　　　*Paul Bentalou*, Marshal,
　　　　　　　　　　　　　　　District of *Maryland*."

The marshal exposed said premises to public sale on the 8th day of June, in the year 1818, and at said sale, *William Patterson*, the lessor of the plaintiff, was the purchaser and highest bidder, by bidding the sum of $16,104 84, and the marshal, upon receiving said purchase money, on the 29th of June 1818, duly made and delivered to *Patterson* a deed for the lot and premises as the same are described in the declaration of ejectment in this cause. This deed, after reciting the judgment for attachment, the writ of attachment, return thereof, judgment of condemnation, and the *fieri facias* thereon issued in the manner as herein before stated, proceeded as follows: "And whereas the said writ came to the hands of the said marshal, who in pursuance thereof, after giving due notice of the time and place of sale, did set up and expose to sale, at public auction, on the premises, all that part of the lot, piece or parcel of ground, taken on the writ of attachment aforesaid, which is contained within the metes and bounds, courses and distances following; that is to say, beginning," &c. describing the lot as the same is described in the declaration in this cause. At which said sale, that is to say, on the 8th of June 1818 aforesaid, the above named *William Patterson* became the highest bidder for, and purchaser of the part of a lot of ground above particularly described, with the appurtenances, at and for the price or sum of $9,900. In consideration of which said sum of money the marshal conveyed the premises to said *Patterson*; which said deed was duly acknowledged and recorded. The plaintiff further gave in evidence, that *Brown* was a merchant engaged in

*(margin)* 1824.

Barney
vs
Patterson

commerce in the city of *Baltimore*; and, for the purpose of showing that he had become, and had been declared a bankrupt, under and by virtue of the provisions of the statute of the *United States* in such case made and provided, the plaintiff produced, and offered to read in evidence, the petition, commission, qualification, depositions, and other proceedings before the commissioners of bankruptcy, duly appointed and qualified, and their judgment thereon, which are set forth; and also a deed from the commissioners aforesaid to *George Grundy* and *Joseph Thornburgh*, who had been duly appointed assignees of the creditors of said *Brown*; which deed is also set out; and also gave in evidence a deed from said *Grundy* and *Thornburgh*, to the lessor of the plaintiff, dated the 27th of January 1819, reciting that they had, at public sale, after due notice, &c. sold the lot and premises herein before described, to *William Patterson*, for the sum of $50; it being the same lot and premises conveyed by *Bentalou* to *Patterson*. But the defendant objected to the admissibility of said petition, commission, qualification, depositions, and other proceedings last mentioned, for the purpose last aforesaid; but the court, [*Ward*, A. J.] overruled the objection, and permitted said evidence to be read to the jury, for the purpose for which it was offered. The defendant excepted.

2. The defendant then prayed the opinion of the court, and their direction to the jury, that upon the matters so as aforesaid given in evidence by the plaintiff, the plaintiff was not entitled to recover; which direction the court refused to give. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, Ch. J. EARLE, MARTIN, and STEPHEN, J.

*Wirt*, (Attorney General of *U. S.* and *Harper*, for the Appellants, stated, that the appellee claimed title to the property for which the ejectment was brought, 1st. Under a deed from *Grundy* and *Thornburgh*, assignees of *Brown*, a bankrupt; and 2d. Under a deed from *Paul Bentalou*, marshal of the *U. S.* in and for the District of *Maryland*. They contended, 1. That the deed from the assignees was not evidence of title without proving the act of bankruptcy committed, and that the record of the proceed-

1824.

Barney
vs
Patterson

ings before the commissioners, being the only evidence offered for that purpose, was inadmissible.

2. That the deed from the marshal passed no title to the lessor of the plaintiff—1st. Because the circuit court of the U. S. for the fourth circuit in and for the district of *Maryland*, had no rightful jurisdiction of the cause in which the judgment was given and the *fieri facias* issued, by virtue whereof the marshal sold the property. 2d. Because the proceedings in said cause, the record of which was given in evidence by the plaintiff below, were irregular, erroneous and defective, and therefore wholly void. On the *first point* they referred to a decision of this court in *Wood vs. Grundy & Thornburgh's Lessee*, at December term 1810, as conclusive that there must be proof of bankruptcy, independent of the proceedings of the commissioners. On the *second point* they contended, 1. That the record of the circuit court was not evidence, as neither of the parties in this case were parties in that proceeding; and that the general rule was, that a judgment was not conclusive except between parties and privies, that it might be evidence, but that it was not conclusive evidence. They referred to *Barr vs. Gratz*, 4 *Wheat.* 220. *Morgan's Lessee, vs. Davis*, 2 *Harr. & M'Hen.* 9 *Runn. Eject.* 110. *Gilb. Evid.* 9. 2 *Esp. Dig.* 12. *Pullen vs. Birbeck*, 1 *Ld. Raym.* 718. 2 *Sall.* 563, S. C. That here was a judgment of condemnation on an attachment, which was entitled to less respect than other judgments. That it was not *prima facie* evidence of a debt, and whenever it came before the court, either incidentally or otherwise, might be examined into. They referred to *Buchanan vs. Rucker*, 9 *East*, 192. *Buttrick vs. Allen*, 8 *Mass. Rep.* 273. *Pawling vs. Wilson & Smith*, 13 *Johns. Rep.* 192. *Phelps vs. Holker*, 1 *Dall. Rep.* 261. *Kilburn vs. Woodworth*, 5 *Johns. Rep.* 37. *Robinson vs. Ward's Ex'rs.* 8 *Johns. Rep.* 86. *Fenton vs. Garrick, Ibid* 197. *Bissell vs. Briggs*, 9 *Mass. Rep.* 464. *Borden vs. Fitch*, 15 *Johns. Rep.* 141. 1 *Phill. Evid.* 254, (note.) That the proceeding under attachment was borrowed from the custom of *London*, and being in derogation of the common law, was to be strictly pursued. They referred to 1 *Com. Dig.* tit. *Attachment*, (I.) 604. *Davidson's Lessee vs. Beatty*, 3 *Harr. & M'Hen.* 534. *West vs. Hughes*, 1 *Harr. & Johns.* 6. *Shivers vs. Wilson*, 5 *Harr. & Johns.* 130. That the proceeding under the at-

1824.

Barney
vs
Patterson

tachment being given by the act of 1715, *ch.* 40, is confined by the 2d section of that act to inhabitants or residents in the state; and the 3d section applies to a different class of persons, absent out of the province, where a short note, &c. was to be left. That this proceeding was under the *second* section of the act, and did not take in the case of *Brown,* who was not an inhabitant or resident of the state when the writ of *capias ad respondendum* issued against him, at the suit of the *United States,* out of the *circuit court* of the *U. S.* that court seeking to carry into effect that act, and which court, they contended, had no jurisdiction thereof, being limited by the subject and character of the parties. That the party plaintiff should be one who might be a defendant, and here the *United States* were plaintiffs, and were not liable to be sued, so that the attachment law could not apply to the *United States.* To show that the circuit court had a limited jurisdiction, they referred to *Turner vs. The Bank of North America,* 4 *Dall. Rep.* 8. By the judiciary act 1789, *ch.* 20, *s.* 11, the circuit court had no jurisdiction in civil cases, unless the defendant was a resident of the district in which the court was held. Where the circuit court act upon the attachment law, it must appear that the party is absent out of the *U. S.* or that court has no jurisdiction. *Hollingsworth vs. Adams,* 2 *Dall. Rep.* 396. If the circuit court had no right to act upon the attachment law, no title accrued under the judgment of condemnation. In *Shivers vs. Wilson,* the character of the plaintiff was looked at; so here the character of the defendant must be looked at, to see if he comes within the description of persons pointed out in the *second* section of the act of 1715. He was neither an inhabitant, nor an absentee who was to return; and if he was liable to be proceeded against, he came within the *third* section of that act. 2. There was no proof of the cause of action by the plaintiffs; neither the hand-writing of the drawer, nor of any of the endorsors of the bill of exchange, was proved. There was no evidence that the bill had been presented for payment, and none that the debt was due. The bill was endorsed in blank, and no suit could be maintained thereon by the *United States.* They referred to *Ringgold vs. Tyson,* in this court, at December term 1810, and *Hudson vs. Goodwin,* 5 *Harr. & Johns.* 115. In the proceedings there is an

omission of an entire term between the judgment for attachment, and the issuing the writ. 3. There was no return made by the marshal to the clause of *scire facias* included in the writ of attachment. Nor was it stated whether the property attached was in the possession of a garnishee, or any other person. Nor was any garnishee summoned. 4. There was no copy of a declaration or short note left, as required by the act. 5. The act confines the attachment to goods, chattels and credits, and cannot be extended by construction to lands and tenements under the statute of 5 *George* II; and if not, then lands and tenements were not liable to be attached. 6. The return to the *fieri facias* is defective. The marshal returned that he made of the lands and tenements of *Brown*, &c. not showing that they were the lands and tenements mentioned in the *fieri facias*. Nor is it stated that they were sold to the lessor of the plaintiff, which must appear by the return, and cannot be supplied by the marshal's deed, which gives no title without the aid of a proper return to the *fieri facias*.

*Taney* and *Magruder*, for the Appellee, stated, that the record of the circuit court had been treated by the counsel for the appellant as if it was under the review of this court on an appeal. When the act of 1715, *ch.* 40, passed, goods, chattels and credits only, were to be affected under it; but under the statute of 5 *Geo.* II, lands and tenements were liable to debts, by construction put upon that statute by our courts; and the same principle which led to that construction, led to its introduction into the attachment law; and since then it has been the uniform settled practice to attach and condemn lands and tenements. In *Davidson's Lessee vs. Beatty*, 3 *Harr. & M'Hen.* 600, 608, 612, 616, it was admitted by the counsel who argued the case, and by the court, that lands and tenements were liable to be attached and condemned. They contended, 1. That if the judgment of the circuit court was *res enter alios acta*, and was not evidence, there was no mode by which a party, deriving title under such a judgment and *fieri facias*, could establish it. But that the judgment might be offered in evidence, they referred to *Barr vs. Gratz's heirs*, 4 *Wheat. Rep.* 213. *Boring's Lessee vs. Lemmon*, 5 *Harr. & Johns.* 223. A court of competent

1824.

Barney
vs
Patterson

jurisdiction, acting in the course of the common law, cannot have its acts impeached in a court of general jurisdiction, where the question comes before that court collaterally, and not by appeal. If the judgment was only *prima facie*, it would be sufficient for all the purposes of the appellee; but it is final and conclusive. They cited *The Marshalsea's* Case, 10 *Coke*, 76. *Tarleton vs. Tarleton*, 4 *Maule & Selw.* 21. Where the suit is on the judgment, the consideration may be gone into, but where the judgment comes in collaterally, it is final and conclusive. No person can impeach a judgment but a party to it, which he can do by way of appeal. A stranger has no right to call on the court to examine into the irregularities of other courts. *Kempe's Lessee vs. Kennedy, et al.* 5 *Cranch*, 173. *Pratt, et al. vs. Law & Campbell*, 9 *Cranch*, 478, 496. *Serg. Law Att.* 114, 116, 117, 121, 123. The records and proceedings in this case are offered in evidence as links in the chain of title, and are produced for the purpose of showing how the title passed to the lessor of the plaintiff, in the same manner as the deeds, under which the title was transmitted to *Brown*, were produced and offered in evidence. *Barr vs. Gratz*, 4 *Wheat.* 215, 220. *Goodtitle vs. Alker*, 1 *Burr.* 136. 1 *Phill. Evid.* 254, ch. 3, s. 3.

2. The subject of the jurisdiction of the circuit court is settled in *Kempe's Lessee vs. Kennedy, et al.* 5 *Cranch*, 185; and *Turner vs. The Bank of North America*, 4 *Dall.* 8.

3. Under the attachment act of 1715, the attachment is a mere process to compel the appearance of the defendant, and belongs to the common law, and is in aid of, and not in derogation of the common law jurisdiction; if borrowed from the custom of *London*, that custom was borrowed from the common law, and moulded so as to conform to the wants of the city. They referred to *Coombes vs. Clements*, in this court at June term 1819. 3 *Blk. Com.* 272, to 282. 1 *Tidd's Pr.* 105, 108, 135 to 137. 1 *Saund.* 67, *(note.)* The circuit court is a court of general jurisdiction, and being so, the attachment was a process which the court had a right to use; and having used it, whether right or wrong, it is not for this court to investigate the subject; that is a question only for the supreme court, on an appeal. If this court had a right to examine into the correctness of the judgment, and their decision was opposed to that of the supreme court, there would be two laws

on the same subject incompatible with each other. By the judiciary act, 1789, *ch. 20, s.* 14, the court may issue all process which may be necessary; and by the 34th section, the laws of the respective states are to be the rules of decision for the government of the *United States. Robinson vs. Campbell*, 3 *Wheaton*, 212. Under the act of 1715, upon two *non ests*, the plaintiff may proceed against all description of persons, and it was so decided by the general court in *Willis vs. Pearce, Garn. of Garrigues, (a.)* If the act admitted of a different construction, how can the fact be come at that *Brown* was not a resident of the state? The record does not show that he was not a resident. The writ and declaration states him to be "late of the *Maryland* district, merchant," which means, that he is in the district according to our practice against all residents of the state. There is nothing in the act which sanctions the principle, that a party who could not be a defendant did not come within the provisions of the act. The proof of the cause of action need not be set out in the proceedings; all that was necessary was, that the court should be satisfied that the money was due, and to satisfy themselves of that, they could resort to *viva voce* proof. The record states that the U. S. made proof of their demand. This was sufficient, and such are the forms in 2 *Harr. Ent.* 78, 79, under the act of 1715. There is nothing in the objection, that there is no return made of the

1824.

Barney
vs
Patterson

*(a.)* The case here referred to of *Willis vs Pearce, Garnishee of Garrigues,* in the general court at April term 1789, was on an appeal from *Kent* county court. It was an attachment on judgment under the act of 1715, *ch.* 40, where two *non ests* had been returned on writs of *capias ad respondendum.* It was alleged, and so stated in the record, that the party, against whose effects the attachment issued, *had never been a resident of this state.* The county court quashed the attachment upon this ground, and the plaintiff appealed to the general court. The cause was argued by *Lethrbury* for the appellant, and by *T Wright* for the appellee. *Martin,* (Attorney General,) though not concerned as counsel, expressed his opinion—that he himself, when he first came into the practice, shortly after the revolution, had put the same construction on the act of assembly of 1715 which had been given by the county court; but, upon inquiry, he had found that *the practice* had been so long and uniformly to the contrary, under the act of 1715, that he thought it was not now to be shaken.

HARRISON, Ch. J. The judgment of the court below must be reversed. It has always been the practice, that attachments under the act of 1715 would lie against the effects of foreigners, notwithstanding they had never been residents. I remember a case many years ago, of an attachment against the effects of a resident in *Virginia,* and the practice has been uniformly so.

JUDGMENT REVERSED.

An attachment may issue against the property of foreigners under the act of 1715, *ch.* 40, whether they are or have ever been residents of this state or not.

*scire facias* included in the attachment. The practice is to lay the attachment on the property, although no person is in possession; but where any person is in possession, then to take notice of the *scire facias*. *Campbell vs. Morris*, 3 *Harr. & M‘Hen.* 535. *Davidson's Lessee vs. Beatty*, *Ibid* 594. It was not necessary that the attachment should have issued, returnable to the term succeeding, the judgment; there is nothing in the act which requires it. The blank endorsement on a bill of exchange, by the decision of this court, must be filled up before verdict. Here there was no verdict. It is an objection to form, and has no foundation in reason. The *English* decisions are opposed to that of this court. Where the judgment is by confession, or by default, no advantage can be taken of such an objection, were it a valid one. The endorsement need not be filled up unless where *non assumpsit* is pleaded, and the plaintiff is put to the proof of his cause of action. The practice of the courts of this state, under the attachment law, so long and uniformly acted under, is evidence of the law. They referred to *M‘Keen vs. Delancy*, 5 *Cranch*, 22, as a case in which proof of the practice was required, and that being obtained, it was considered the law. All the objections, previous to the judgment, are unfounded; and whether the judgment is correct or not, or whether the writ of *fieri facias* was regularly issued, cannot now be inquired into. The case stated admits the sale of the property by the marshal, and the purchase by the lessor of the plaintiff. And the law is, that the sheriff need not return the execution; and this court has said, in *Boreing's Lessee vs. Lemmon*, 5 *Harr. & Johns*, 225, that the legal estate, in the land sold under a *fieri facias*, is transferred, by the sale of the sheriff, to the vendee, by operation of law; and that a deed from the sheriff is unnecessary to vest the legal estate. If a deed was not necessary, a return by the marshal was unnecessary, as it need not be made. This is the law of *England*. 2 *Bac. Ab.* tit. *Execution*, 710, 740. The deed, without any thing else, is evidence of title, there must be some writing on the subject. 7 *Bac. Ab. Appendix*, tit. *Evidence*, 458. *Jeanes vs. Wilkins*, 1 *Ves.* 195. 2 *Tidd's Pr.* 918, 928. *Palmer's* case, 4 *Coke*, 74. *Palmer vs. Humphrey*, *Cro. Eliz.* 584. *Taylor vs. Cole*, 3 *T. R.* 295, 297. If the return is the only evidence of title, then the deed was

unnecessary, and a nullity; and if the return is defective, the deed cannot aid it. There is no authority on which to ground the principle, that the return is necessary, and that the return alone vests the title to the property sold. The act of 1813, *ch.* 102, *s.* 3, 4, shows that a deed from the sheriff is to be given. It is a legislative exposition of the law on that subject. If the deed does not convey the title what operation has it? Is it of no value unless it co-operates with the return? The doctrine in *New-York* is, that the sale by the sheriff is to be established by legal proof, and that it may be proved as other facts are to be proved. They referred to *Jackson vs. Bartlett,* 8 *Johns. Rep.* 361. *Jackson vs. Bush,* 10 *Johns. Rep.* 223. *Jackson vs. Rosevelt,* 13 *Johns. Rep.* 97. *Jackson vs. Dickenson,* 15 *Johns. Rep.* 309. *Jackson vs. Sternbergh,* 1 *Johns. Ca.* 153. It is not the sheriff's sale nor his deed which vests the title in the purchaser, but the law. The return of the sheriff may be evidence, but the sale and payment of the purchase money may be proved in any other way. Courts have protected the title of purchasers of property at sheriff's sales, notwithstanding the *fieri facias* be erroneous, or the judgment on which it issued reversed. *Jeanes vs. Wilkins,* 1 *Ves.* 195. 2 *Bac. Ab.* tit. *Execution,* 740. *Drurie's* Case, 8 *Coke,* 143. The omission of the sheriff to make a proper return ought not to prejudice the purchaser.

*Harper,* in reply, stated, that the great question was, how far the proceedings in the circuit court were to be examined by this court. He contended that the judgment was to be considered as a judgment of a foreign court. It was a special proceeding, under a special authority, which was to be strictly pursued, and differed from ordinary proceedings in other cases in the *ordinary course of the court's* jurisdiction. By the law of *England* a judgment of a foreign court of admiralty having jurisdiction, is conclusive, because all the world have notice. But if the sentence professes to be made on particular grounds which are set forth, but which appear not to warrant the condemnation, the sentence will not be conclusive as to such facts. The sentence of a domestic court is conclusive within its sphere. But the judgments of foreign courts, acting out of their jurisdiction, are not conclusive, but examinable.

So of a domestic court acting beyond its jurisdiction. A court exercising general jurisdiction may be vested with special powers in particular cases; and they must be exercised within the sphere of these special powers. To see that they have been so exercised, may be examined into. It has been urged, that the proceeding under the attachment law of 1715, was according to the course of the common law, using process to compel appearance. When the defendant is in court, the proceedings are according to the course of the common law; but when the attachment is resorted to, the course of the common law is abandoned. By the course of the common law a jury may pass on the claim. Here it is not permitted, but a judgment is rendered without the intervention of a jury. This proceeding is to affect the property of the defendant—a proceeding *in rem.* The common law course is against the person, and not the property, until the defendant has had an opportunity to defend himself. This is an essential departure from the common law. The writ of attachment is not an execution, and it was so decided in *Davidson's Lessee vs. Beatty,* 3 *Harr. & M'Hen.* 594, and *Owing's vs. Norwood's Lessee,* 2 *Harr. & Johns.* 96. It is in the nature of mesne process; and a judgment of condemnation is not a common law judgment. It is a new and irregular proceeding, unknown to the common law, and grows out of some authority given by the statute, contrary to the common law; and being so given, the court must conform strictly to the statute. If the sentence of a court of admiralty, which is supposed to act according to the law of nations, may be impeached, there can be no reason why a domestic judgment should not. Suppose a man was tried and convicted in *Baltimore,* where the offence was not committed within the jurisdiction of the court, would not such a judgment be examinable? If so, there is no distinction in principle between that case and the one before the court. There is no reason why a person, not a party to the proceedings, should not take advantage of the errors therein. The defendant here is in possession, and it may be that he is so for a valuable consideration, and has a good title. But the proceeding in this case was under a special authority, to which the general law does not apply. In *Shivers vs. Wilson,* this court treated the proceeding as a nullity; and in *Kempe's Lessee vs. Kennedy,* 5 *Cranch,*

173, the supreme court held, that where a court of general jurisdiction acted within the sphere of its authority, its proceedings were not examinable when coming before them collaterally. But that where the jurisdiction was limited, it must be shown, upon the record itself, that the court acted within the sphere of its authority. So also in 2 *Esp. Dig.* 12. *Pullen vs. Birbeck*, 1 *Ld. Raym*, 718; and 2 *Salk.* 563, S. C. Where a special authority is delegated, and the acts under it are not legally and specially in pursuance of it, they are void; and where acts are void, all persons may take advantage of them. *Morgan's Lessee vs. Davis*, 2 *Harr. & M'Hen.* 9. The proceedings here are examinable in the same manner as a foreign judgment is. The state courts were foreign courts, before the adoption of the constitution of the *U. S.* By the constitution some change was effected, so as to point out the manner in which the judgments, &c. of one state, should be evidence in another state. But the courts remain foreign to each other as they were before. A judgment in a court of the *U. S.* must be proved in the state courts in the same manner as foreign judgments are proved, and they are to be received and treated as such, and are only *prima facie* evidence. *Mills vs. Duryee*, 7 *Cranch*, 483. *Hampton vs. M'Connell*, 3 *Wheaton*, 234. Here the judgment, and proceedings under it, are offered in evidence as an essential link in a chain of title, and it is examinable in the same manner that a conveyance would be, to see that it is correct in all its parts. There is no distinction between the judgment coming before the court collaterally and directly. Here it is brought in to give effect to the plaintiff's title, so that it comes directly before the court. There is no reason why the court should be precluded from looking into the judgment more in the one case than in the other. The questions decided in *Kempe's Lessee vs. Kennedy*, 5 *Cranch*, 185, & *Pratt vs. Law & Campbell*, 9 *Cranch*, 495, are not similar to the one before this court. In *Barr vs. Gratz*, 4 *Wheaton*, 220, the court did not say that the judgment was not examinable. Because it was *prima facie* evidence it does not follow that it was conclusive evidence. This case shows, that where the judgment is brought in collaterally, as a muniment of title, it is *prima facie* evidence. In *Tarleton vs. Tarleton*, 4 *Maule & Selw.*

21, there was no objection to the jurisdiction of the court in *Granada*, which did what it had a right to do; and the court of K. B. was called upon to enlarge the sum awarded, which could not be done unless on appeal. In *Keilburn vs. Woodworth*, 5 *Johns. Rep.* 39, 41, a judgment in *Massachusetts* was offered in evidence in *New-York;* and although it was a good judgment in *Massachusetts*, yet the court in *New-York* refused to receive it as *prima facie* evidence. This authority is in favour of the appellant. This judgment is examinable on the ground of its being a foreign judgment, and its also being under a special authority in derogation of the common law. In the return to the *fieri facias* there is no designation or description of the property sold. The deed states, that the land was sold to the lessor of the plaintiff, and this is the only proof of the sale. There cannot be two modes of proof to supply defects in the return to a *fieri facias*. The return is the only legal evidence of the sale; and it is the only evidence of title under the sale. There is no principle of law which says, that a title to land can be made out by parol evidence. This was attempted in *Maydwell vs. Carroll*, in this court, at December term 1813. Parol evidence cannot supply the defect of a written title. The return of a sheriff is made under oath, but his deed is not, and cannot be entitled to the same weight as his return. In *Boreing's Lessee vs. Lemmon*, the sheriff's return was special, that he had sold the lands to the defendant. The court did not in that case say that the deed was evidence of title. The doctrine that a *fieri facias*, under which lands are seized and sold, need not be returned, is not applicable to our system of laws. It may do in *England*, where personal property only can be seized, and which passes by delivery. It is not so here where a fee simple is sold, and where all titles to land are matters of record.

BUCHANAN, Ch. J. delivered the opinion of the court. This is an appeal from the judgment of *Baltimore* county court, in an action of ejectment, brought by *William Patterson's* lessee, the appellee, against *John Barney*, the appellant.

The appellee claims title under a sale made to the lessor of the plaintiff by *Paul Bentalou*, marshal of the *United States*, in virtue of a writ of *fieri facias*, sued out of

the circuit court of the *United States,* for the District of *Maryland,* upon a judgment of a condemnation by that court, of the premises in question, on proceedings in attachment, in a suit instituted by the *United States* against *Aquila Brown,* to whom the premises so condemned and sold belonged. All discussion of the *first* bill of exceptions was waived by the counsel on both sides; but the question involved, having been heretofore differently decided in this court, we do not concur in opinion with the court below on that exception.

The question raised on the *second* bill of exceptions taken at the trial is, whether the lessor of the plaintiff acquired the legal title under and in virtue of that judgment and sale? On the part of the appellant it has been strongly urged, that he did not; *first,* on the ground that the proceedings under the attachment were *coram non judice,* and wholly null and void; and *second,* that the judgment of the circuit court is a foreign judgment, and not conclusive, but examinable.

By the *eleventh* section of the act of congress of 1789, *ch.* 20, it is provided, "that the circuit court of the *United States* shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law, or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, and the *United States* are plaintiffs or petitioners, or an alien is a party, or the suit is between a citizen of the state where the suit is brought, and a citizen of another state." And by the *thirty-fourth* section of the same law it is enacted, "that the laws of the several states, except where the constitution, treaties, or statutes of the *United States,* shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the *United States,* in cases where they apply."

The amount for which the suit was brought by the *United States* against *Brown,* far exceeded five hundred dollars, the circuit court therefore had full, complete and unlimited jurisdiction of the subject matter in dispute, under the *eleventh* section; and the laws of this state, applicable to the subject, being by the *thirty-fourth* section made rules of decision for the circuit court, that tribunal was clothed with all the power and authority to award an

attachment possessed by the courts of this state, under the act of 1715, *ch.* 40. The *second* section of this act, upon which the proceedings in attachment in the circuit court were founded, is in these words: "from henceforth no attachment shall issue out of any court of this province, before a writ or summons be first made out, upon which writ, if the party defendant be an inhabitant, or resident within this province, and the sheriff shall return a *non est inventus,* one other writ or summons shall thereupon, in like manner aforesaid, issue forth against the said defendant; and if the sheriff shall, upon the second writ or summons, return a *non est inventus* likewise, an attachment shall and may, in manner and form hereafter set down, be awarded." The *third* section authorises an attachment, "such proof being made by the plaintiff of his action as the court shall think fit," to be awarded against the "goods, chattels and credits," of the defendant, with a clause commanding the sheriff, at the time of executing the attachment, to make known to the person or persons in whose hands or possession the goods, &c. attached are, to appear before the court on the return of the attachment, to show cause why such goods, &c. should not be condemned, &c. and directs that, if on the return day neither the defendant nor the garnishee shall appear to show cause to the contrary, the goods, &c. shall be condemned, and execution thereof awarded as in other judgments, the plaintiff giving security for the use of the defendant, (which was done by the *United States,*) to make restitution of the goods, &c. so condemned, or the value thereof, if the defendant shall at any time within a year and a day, in person, or by attorney, appear to the original action, and prove payment of the debt or demand, or otherwise in court discount or bar the plaintiff of the same, or any part thereof." In support of the first position it has been contended, that in the case of a foreigner no attachment can be awarded on the return of *non est inventus* upon a second *capias,* but that it will only lie where the defendant is an inhabitant or resident of the state, which, to give jurisdiction to the court, must appear upon the face of the proceedings in the cause; and that the proof in the record shows that *Brown* was not an inhabitant of this state at the time of suing out the writ of attachment, but was residing in *Europe.* To which it may be answered, that the proof of *Brown's* residence in

*Europe* was taken at the trial of this cause in the court below, and not in the suit in which the attachment was awarded by the circuit court, with which it has no connexion. But that in both the writs of *capias ad respondendum*, the declaration, and the writ of attachment, he is styled *Aquila Brown, late of the Maryland District.* The bill of exchange, on which the suit was founded, is dated at *Baltimore*, and the declaration charges that *Brown* was residing in the *Maryland District*, and there carrying on the business of a merchant, at the time the bill was made. So that whatever may have been the fact in relation to his residence, it does, technically at least, appear upon the face of the proceedings that he was a resident of the state, and there is nothing in the case from which the contrary appears, or can be inferred; and if his being a resident was necessary to the jurisdiction of the court, is not the style and character given him in the proceedings *prima facie* sufficient to confer and sustain that jurisdiction? And what is there in the act of assembly requiring of a plaintiff to make proof of the residence of the defendant by affidavit, or otherwise, or to do any thing more than was done in the case of the *United States* against *Brown* to give jurisdiction to the court? No mode of proof is pointed out, nor any description of proof expressly required; all that is said is, that no attachment shall issue, where the defendant is a resident of the state, before a second *non est inventus* has been returned.

But is it true that an attachment can only be awarded under the *second* section against the goods, &c. of a resident defendant? The act is indeed silent as to foreigners *eo nomine*, but is it not prohibitory only as respects residents? The language used is, not that no attachment shall issue unless the party defendant be a resident of the state, or if he be a foreigner or nonresident, but the words are, "that from henceforth no attachment shall issue out of any court of this province before a writ or summons be first made out, upon which writ, if the party defendant be an inhabitant or resident within this province," &c. Then provision is made for the return of a first and a second *non est inventus*, before an attachment shall be awarded. But it is not provided that an attachment shall not be awarded if he be not an inhabitant or resident; and in the absence of any such provision, the construction found to have been

given to that section of the act by the different courts of the state is, that on the return of two *non ests*, an attachment will lie against the property of the defendant, whether he be in *fact* a resident or not, and the practice has been so long settled as to command respect whatever would be the construction, if it was now *vexata questio*. It is also objected, 2d, that there was not sufficient proof made of the cause of action to warrant the issuing of an attachment. 3d. That the attachment awarded is against the lands, tenements, goods, chattels and credits, of *Brown*, whereas the act of assembly only authorises an attachment against the goods, chattels and credits. 4th. That a term was suffered to intervene between the time of issuing the attachment, and the term at which it was awarded. And 5th. That it does not appear that there was any service by the marshal of the *scire facias* contained in the writ of attachment, no notice being taken of any such service in his return of the attachment. The *second* and *third* objections have nothing in them; with respect to the former, the act of assembly prescribes no particular proof, but leaves it entirely in the breast of the court.

The bill of exchange on which the suit was brought, was exhibited to the court, and appears in the proceedings, and in the judgment for the writ of attachment it is recited, that the *United States* made proof to the court of their damages to the sum of $58,201 71; and with regard to the latter, it is sufficient to say, that lands were not liable to execution for debt at the time of the passage of the act, and not being in terms embraced by it, were not subject to attachment. But under the construction given to the statute 5 *Geo.* II, *ch.* 7, lands became liable to be taken and sold by *fieri facias* in the same manner as goods and chattels, and have ever since been uniformly held to be subject to attachment by all the tribunals of the state.

The attachment in question, therefore, was properly awarded under the circumstances of the case, jurisdiction being given to the court on the face of the proceedings. If it were otherwise, property acquired in this state by foreigners residing without the *United States*, would be completely protected against their creditors, there being no other mode of reaching it, and when they are placed in no worse situation than citizens, and their property is subjected only to the same process, it is no cause of complaint

1824.

Barney
vs
Patterson

that they are styled and treated as citizens in the forms of proceedings.

As to the *fourth* and *fifth* objections, the attachment should regularly have been issued as of the term at which it was awarded, and it was the duty of the marshal to have served the *scire facias* in the attachment on the person or persons who were found in possession of the property attached, and to have certified such service, or if the property was unoccupied, to have made a corresponding return. But though the intervening of a term before the issuing of the attachment, and the negligence of the marshal, were irregularities in the proceedings, the judgment of condemnation is not therefore void, (whatever disposition might be made of it by an appellate court,) the circuit court being a court of record of competent jurisdiction, from whose decisions an appeal or writ of error lies to the supreme court of the *United States*, and is not an *inferior court* according to the technical sense of the term as used in *England*. It is not like the case of special and extraordinary powers given by statute to a court in relation to a subject matter of which such court has no jurisdiction independent of the statute, but derives its authority to act upon facts arising *in pais* entirely from the statute giving the power, and prescribing the mode of proceeding. The act upon which the proceedings of the circuit court were founded, professes to give no new jurisdiction, but only to regulate and limit the powers of courts already possessed of full and complete jurisdiction of the whole subject matter. The preamble is in these words: "Whereas it is highly expedient to settle the manner of proceedings on attachments, and limiting the extent of them, and to provide what shall be levied on such attachments and executions." It belongs to the sovereign authority of a state to prescribe the manner of proceeding in its courts of justice, and to make such provisions for the recovery of debts as the legislature may deem most expedient. The proceeding by attachment under that law is only process to compel the appearance of a defendant to a suit before brought and depending in a court of competent jurisdiction, whose *person* cannot be reached by the process of the court, of which it comes in aid, and without which the plaintiff would be without remedy; and it is not a proceeding in derogation of the *principles* of the common law, but rather in mitigation

of the severity of the common law in favour of defendants: By the common law, where a defendant was summoned; and would not appear, his goods were liable to be proceeded against by attachment and distress infinite, and the goods seized were forfeited to the king; and where the defendant was abroad or kept out of the way so that he could not be arrested, the plaintiff might proceed against him to outlawry, which was also attended with a forfeiture to the king of all his goods and chattels: The proceeding to outlawry, or by *distringas*, was to compel the appearance of the defendant; and so with the attachment here, it is only a proceeding against the defendant's goods, to compel his appearance, with this difference in favour of the defendant, that a year and a day is given him to come in and appear to the original action, and if he can defeat it, to have a return of his property without any forfeiture to the state. And it would seem, from the language of the preamble; that the act was passed with a view to a mitigation of the rigour of the common law; and an outlawry, though illegal because the party was beyond sea, cannot be set aside by a third person in a collateral action, but is voidable alone by the party himself, and that only *sub modo* by his appearing and putting in bail. 6 *Com. Dig.* (C 2,) 488. *Simonds vs. Parmiter*, 1 *Wm. Blk. Rep.* 20. And in the case of *The Marshalsea, Coke*, 77, it is laid down, "that if the court of common pleas hold plea in debt, trespass, &c. without an original, it is not *void*, for they are judges of those pleas, and it cannot be said that the proceeding is *coram non judice*," and surely in such case the irregularity is as great as any appearing in the proceeding before the circuit court. And in the same book, 76, it is said, "That if the court of common pleas, in a plea of debt, awards a *capias* against a Duke, Earl, &c. which by *law* doth not lie against them; and that appears in the writ itself; and if the sheriff arrests them by force of the *capias*, although the writ be against law, notwithstanding, inasmuch as the court has jurisdiction of the cause, the sheriff is excused;" which could not be if the proceeding was *void*.

With regard to the *second point* raised, "that the judgment of the circuit court is a foreign judgment and not conclusive but examinable," the long and well established rule in *England* is, that foreign judgments are not conclusive, but are always examinable, where the parties

claiming the benefit of them apply to the courts of that country to enforce them; as, if an action of debt or *assumpsit* be brought upon such a judgment, it is only *prima facie* evidence of the debt, and may be impeached by the other party; but that the judgments of foreign courts of competent jurisdiction, when coming incidentally in question, have the same force and effect with domestic judgments. That principle was recognized and adopted in *Pennsylvania* in *Repelje vs. Emery*, 2 *Dall.* 281, and in the supreme court of the *United States*, in *Croudson & others, vs. Leonard*, 4 *Cranch*, 434; and the same principle applying with equal force in this state, the same rule will be adopted here. Treating then the judgment of the circuit court as the judgment of a foreign tribunal of competent jurisdiction, it stands upon the same footing that a domestic judgment offered at the trial for the same purpose would have done, and was not liable to be impeached in the *Baltimore* county court for any mere irregularity, though such irregularity should be a sufficient ground for reversal in an appellate court, unless the *Baltimore* county court could have erected itself into a court of errors to revise and correct the proceedings of the circuit court, nor can it be here. But under the peculiar structure of our political system, it should not be treated as a foreign judgment. The constitution and laws of the *United States* are the supreme law of this state; the laws of this state furnish rules of decision for the circuit court, and causes commenced in the state courts may be removed for trial into the circuit court. The citizens of the state are returned and serve as jurors in that court, and are amenable to its process; and their property, real and personal, is liable to seizure and sale by the marshal of the district, under executions issued upon the judgments of that court, with other attributes of a domestic court, belonging to that tribunal, which place it on a ground very different from that of a foreign court.

This judgment is also objected to on the ground, that it is *res inter alios acta*, the appellant not being a party to the proceedings. But the doctrine that judgments and decrees are only evidence in suits between parties and privies, though generally true, is not applicable to this case; the judgment of the circuit court being introduced, not as binding *per se*, upon the rights of the appellant, but only

as a document connected with the chain of the appellee's title, and is no more obnoxious to objection, than a deed from *Brown*, or any other title papers, equally *res inter. alios acta*, would be. Without showing that judgment, under the authority of which the sale by the marshal was made to the lessor of the plaintiff, the validity of that sale would not be established; and to reject it, would be in effect to decide that a title derived under a sale by a marshal or sheriff is of no validity in a suit by or against a stranger, and to render the law in relation to sales of land, by *fieri facias*, worse than a mockery.

It has further been contended in argument, that the lessor of the plaintiff acquired no title by his purchase from the marshal, on the ground—1st. That a *fieri facias* issued upon an erroneous judgment confers no authority upon the officer to sell; and 2d. That the marshal's return on the *fieri facias* is imperfect and void. The answer to the first of these positions is, that if it should be admitted that there are irregularities in the proceedings under the attachment, which would on appeal to the proper tribunal be sufficient cause for a reversal of the judgment, yet that judgment is not only not *void*, but has not been reversed, and is still in full force, and cannot be impeached by a stranger, in another court, in this collateral way. If it was not merely voidable, but absolutely void *ab initio*, a different question would be presented. But being a subsisting judgment by a court of competent jurisdiction, and not a mere nullity, the *fieri facias* clothed the marshal with authority to sell, and if the judgment had afterwards been in fact reversed, the title of the purchaser would not thereby have been defeated. The law will not permit even the party himself, who has suffered his land to be sold under an erroneous judgment, to disturb the title of a *bona fide* purchaser, by afterwards procuring the judgment to be reversed. If it was otherwise, there would be no security to purchasers, and writs of execution would be of little effect, as few would incur the risk attending such purchases.

The objection to the return of the *fieri facias*, stands on no better ground. It is true that the return does not set out the name of the purchaser, and that no description is given of the property sold, for which reason it might perhaps have been set aside on motion. But it is not the return of the officer that gives title to a purchaser, but the

previous sale; which was decided by this court in the case of *Boreing's Lessee vs. Lergmon*, 5 *Harr. & Johns.* 223. And it would be of dangerous consequence to *bona fide* purchasers, if after having paid their money for property sold under competent and legal authority, they should be at the mercy of officers who might make imperfect returns of executions, or if they pleased make no returns at all. But a sheriff's sale of land being within the statute of frauds, some memorandum in writing is necessary to be made. It is therefore always right and proper, for the security and protection of purchasers, that in addition to a deed for the land sold, there should be a special return of the execution, particularly describing the premises, and setting out the name of the purchaser, either of which, though not operating to pass the title, would be safe and competent evidence of the sale.

In this case the sale by the marshal was of the specific property condemned according to the act of assembly, for which he passed his deed to the lessor of the plaintiff, containing a sufficient description of the premises sold.

JUDGMENT AFFIRMED.