YERBY vs. LACKLAND, et al. Garn. BEEDING.

APPEAL from *Montgomery* county court. The now appellant, as plaintiff in the court below, in order to obtain an attachment under the act of 1795, ch. 56, produced to the clerk of that court an affidavit, with a promissory note thereto annexed, together with a warrant from a justice of the peace of that county, directing the attachment to be issued. The affidavit is as follows: "State of *Maryland, Montgomery* county, to wit: On this fourth day of February 1819, personally appeared before me, the subscriber, a justice of the peace for the county aforesaid, *John Yerby,* a citizen of the *United States* of *America,* and made oath on the Holy Evangels. of Almighty God, that *Craven P. Beeding* is justly and *bona fide* indebted to him in the full and just sum of three thousand seven hundred and fifty-eight dollars current money, over and above all discounts. And the said *John Yerby* further made oath at the same time, that the said *Craven P. Beeding,* to his certain knowledge, is not a citizen of the state of *Maryland,* and doth not reside therein. *Jesse Leach.*"

An attachment was issued in the usual form on the 4th of February 1819, and was laid upon sundry parcels of land claimed by *Beeding* in right of his wife, and also laid in the hands of the executors of *James Lackland,* and of *James C. Lackland,* as garnishees, on the 18th of February 1819, who appeared and pleaded *Nulla Bona.* To this plea there was a general replication, and certain interrogatories were exhibited to the garnishees, which they answered.

At the trial it was agreed, that *James Lackland,* deceased, died in the year 1814, having by his will, dated the 9th of October 1813, devised, among other things, as follows: "I will and devise, that all my estate, both real and personal, remain under the care and control of my executors hereinafter named, until all my children arrive at full age; and after they all arrive at age, and two thirds of them demanding a division, I will and devise, that all my estate, real and personal, shall be equally divided between all my children or their heirs, and that those of my children to whom I have made advancements shall bring such advancements into hotchpot, as a part of my estate, before such division takes place. I further will and devise, that if my executors hereinafter named, shall be of opini-

Under the act of 1795, ch. 56, no attachment can issue except the attaching creditor appears by the proceedings to be a citizen of this state, or of some other of the U. States.

It is not sufficient that he appears to be a citizen of the U. States.

One may be a citizen of the district of Columbia, or of either of the other territories of the U States, and not be a citizen of any one of the states, within the meaning of the said act of 1795, ch. 56; and no citizen of the said district, or of the territories, can issue an attachment under that act.

on that they can make any advancements to my son *Dennis Lackland*, out of the profits arising from my estate, after supporting my children that are single, that they may in their discretion, advance him any sum as a part of his portion of my estate, so as not to exceed his full portion of my estate; and provided any of my children should marry before a division of my estate takes place, I hereby authorise and empower my executors to make such advancements to either of my children so marrying, so as not to exceed their portion of my estate, as they in their discretion may think proper." *James Lackland* left, at the time of his death, eight children, his devisees, to take his estate real and personal, according to the terms and conditions of his said will, and the youngest child arrived at the age of 21 years in May 1820. *Rosetta Beeding*, then *Rosetta Lackland*, was one of the children and devisees of *James Lackland*, and the property mentioned in the schedule of the sheriff in this case was a part of the estate of *James Lackland* at the time of his death. In the spring of the year 1816, *Craven P. Beeding* intermarried with *Rosetta Lackland*, one of the daughters and devisees as aforesaid of *James Lackland*, and at the time of their intermarriage, and at the several times hereinafter mentioned, the estate, real and personal, of *James Lackland*, was held by the devisees in common, and undivided, under the care of the executors named in the will, according to the terms and provisions of the same. After this marriage *Craven P. Beeding* received from the estate of *James Lackland*, at various periods and dates, personal property to the value of $1129 10. In February 1818, the real estate of *James Lackland*, being then held in common under the will aforesaid, and the devisees of the age of twenty-one finding it impossible to have a sale or division of the real estate, without legislative interference, they the said children and devisees, with the aid and consent of the guardians of those under age, procured the passage of an act of assembly of this state, 1817, *ch.* 215, entitled, "An act to appoint trustees for the sale of the real estate of *James Lackland*, late of Montgomery county, deceased." By this act, *William Darne* and *Dennis Lackland* were appointed trustees to make sale of all the real estate of *James Lackland*, upon certain terms and conditions, first giving bond, with security to be approved by the orphans court of the county. The money

arising from the sale of the said lands, after the payment of expenses and the debts due by the estate of *James Lackland*, was directed to be paid over to his devisees, or to his, her or their guardian or guardians, representative or representatives, in equal proportions. The trustees entered into bond, agreeably to the directions of this act of assembly, on the 15th of August 1818, but had not sold any part of the land therein mentioned at the time the attachment in this case was laid on the property in question. After the passage of the act of assembly, but before any sale was made under it, *C. P. Beeding*, and *Rosetta* his wife, executed and delivered, on the 21st day of February 1818, and which was duly acknowledged and recorded, an indenture, conveying and transferring to *James C. Lackland* all their right and title to one eighth part of the real estate of *James Lackland*, deceased, "to have and to hold the said estate and interest so as aforesaid described, and hereby bargained and sold, or meant, mentioned, or intended hereby so to be, and every part and parcel thereof, to the said *James C. Lackland*, his heirs and assigns, for ever, in trust for the intent and purpose, that he hold the same, and receive the rents, issues and profits, for the separate and exclusive use and benefit of the said *Rosetta L. Beeding* herein named; and that if the said estate shall be sold under an authority from the *Maryland* legislature, or by any other legal authority, that then he the said *James C. Lackland*, shall have and receive the proceeds of the sale, so far as they the said *Craven P. Beeding* and *Rosetta L. Beeding*, or either of them, would be entitled if the sale had been so authorised and made before the execution of this instrument of writing; and the said proceeds, so received, he the said *James C. Lackland*, and his heirs, shall hold and employ for the sole separate and exclusive use and benefit of the said *Rosetta L. Beeding*, and her heirs and assigns, for ever." On the 19th of September 1818, *Craven P. Beeding*, duly executed, acknowledged, delivered and recorded, an indenture, conveying and transferring to *James C. Lackland* all his personal property, and directing the same to be sold, and out of the proceeds to pay certain of his creditors, and the residue, if any, to be divided amongst all his other creditors, &c. On the 15th of October 1818, *Craven P. Beeding* drew certain drafts on *William Darne* and *Dennis Lackland*, as trustees under

1825.

Yerby
vs
Lackland

the act of assembly aforesaid, one in favour of *A. Taney,* admitted to be for a valuable consideration, and the other in favour of *James C. Lackland,* which were by them accepted, with the following proviso: "provided however, that it shall not be payable by us until a sale of the estate of *James Lackland,* deceased, and not then unless allowed by the court, which shall hereafter govern us in the payment of the money falling due for *Rosetta L. Beeding's* part. And provided also, that if the conveyance to *James C. Lackland* should be sustained as valid for the whole interest conveyed, or the draft in said *Lackland's* favour, this day by us accepted, be sustained in the whole, then this acceptance shall be void." In the summer or fall of 1819, *C. P. Beeding* became an insolvent debtor in the county of *Washington,* in the District of *Columbia,* where he then lived, and had lived for more than three years before, and obtained from one of the judges of the circuit court for the county aforesaid, a discharge according to law, under the acts of congress provided for the relief of insolvent debtors. It was also agreed, that the promissory notes filed with the affidavit made by the plaintiff, were drawn by *C. P. Beeding,* and delivered to the plaintiff, and that *C. P. Beeding* was not a citizen of the state of *Maryland* when the affidavit in this cause was made by the plaintiff, and the attachment was issued and laid. Also that the plaintiff resides, and always has resided in *George-Town,* in the District of *Columbia;* and that after the said notes were drawn and delivered, they were (as it had been intended they should be,) endorsed by the plaintiff and *James Melvin,* and son, and discounted, for the accommodation of *Beeding,* at the Bank of *Columbia,* in renewal of certain other notes of the same amount, and similarly drawn and endorsed, and discounted before them, and which had been continued in said bank, as an accommodation to *Beeding,* for a year previous to the date of those now filed; and that when the said last notes fell due, they were not paid by *Beeding,* but taken up and paid by the plaintiff, *Beeding* having then failed or stopped payment, and having been considerably indebted for some time before and at the time of his conveyances and drafts herein before mentioned. It was further agreed, that the affidavits of the several defendants, relative to the real and personal estate of *James Lackland,* and the proceeds and profits thereof, and *Beed-*

1825.

Yerby
vs
Lackland

*ing's* interest therein, should be considered a part of this statement. On these facts the plaintiff prayed the court to instruct the jury, that the deed from *Craven P. Beeding,* and *Rosetta* his wife, to *James C. Lackland,* dated the 21st of February 1818, and the draft in favour of *James C. Lackland,* were fraudulent and void as against the plaintiff; that *Beeding,* by his intermarriage with his said wife, became seized of an interest in the lands of which her father died seized as aforesaid, and upon that interest the plaintiff had a right to lay an attachment, and having laid it thereon, was entitled to a condemnation thereof in satisfaction of the amount of his claim; as also for the sums stated to be and to have been in the hands of the defendants, as garnishees, for the rents and profits thereof, at the time of laying the attachment, and since. The court, [*Ridgely* and *Kilgour,* A. J.] gave the following opinion: The plaintiff hath prayed the court to direct the jury, upon the aforegoing statement of facts, that the deed from *Beeding,* and wife, to *James C. Lackland,* dated on the 21st of February 1818, and also the order in favour of *James C. Lackland,* bearing date on the 15th of October 1818, drawn on *Darne* and *D. Lackland,* are fraudulent and void as against the plaintiff. That *Beeding,* by his intermarriage with his wife, became seized of an interest in the lands of which her father died seized, and upon that interest the plaintiff had a right to lay an attachment, and is entitled to condemnation thereof, in satisfaction of his claims; also condemnation for the amount of all sums of money stated to be and to have been in the hands of the defendants, as garnishees, arising from the rents and profits of said testator's real estate at the time of laying said attachment and since. Upon this application to the court three questions arise for their consideration and direction—*First.* Whether the deed from *Beeding* and wife to *James C. Lackland,* dated on the 21st of February 1818, and the order drawn by *Beeding* on *Darne* and *D. Lackland,* dated the 15th of October 1818, and conditionally accepted by them on the 19th of the same month, are fraudulent and void against the plaintiff? The court are of opinion, that fraud is a fact that may as properly be inquired into in a court of law as in a court of equity. That by the intermarriage of *Beeding* and wife, (there being no previous marriage contract between them,)

he the husband, in virtue of his marital rights, acquired an interest in the wife's proportion of her father's real estate, subject to the terms prescribed in the father's will. That it being admitted by the parties that *Beeding* was indebted to the plaintiff, (at the time of the execution of the said deed and at the time the said order was drawn,) to the amount for which this suit is brought, and the said deed appearing on the face of it to be a voluntary deed without valuable consideration, it is therefore declared by the court to be void against the plaintiff, an antecedent creditor, and of no legal effect to defeat the plaintiff's claim in the present suit; and that the order drawn on *Durne* and *D. Lackland* by *Beeding*, in favour of *James C. Lackland*, as trustee for the separate use of his wife, (being founded on the supposed right of the husband to make such a disposition, although previously involved in debt,) and being in pursuance of and in conformity of the deed of trust aforesaid, is also deemed by this court to be null and void, so far as the plaintiff may be affected as a creditor.

With respect to the *second* question, whether the plaintiff had a right to lay his attachment on the undivided interest in the real estate acquired by *Beeding's* wife under the will of her father, and have condemnation thereof in this suit? will depend on the present condition of the real estate. By the act of assembly of 1817, referred to, the real estate of the testator, *James Lackland*, was placed under the power and control of trustees, who accepted the trust, gave bond and security for their faithful performance, and who have proceeded to execute the same long before the present attachment was laid upon the lands. It is therefore the opinion of the court, that the trustees have acquired such a disposing power and interest in the lands, that the present attachment cannot affect or bind the same, even if it had been laid in their hands, and they had been made parties to the suit. That the plaintiff has no remedy in the present suit against the said real estate, but his relief is in a court of equity, where trusts are alone cognizable.

In relation to the *third* question respecting the rents and profits, &c. received by the defendants, the court are of opinion, that whatever sum or sums of money which were in the hands of the defendants as executors, and received as the wife's proportion of the rents and profits, or in the

1825.

Yerby
vs
Lackland.

hands of the defendant *James C. Lackland*, as trustee, are liable to be affected by the present attachment, and condemnation may be rightfully had thereon, not only the monies in their hands at the time of laying the attachment, but all monies respectively received by them since that period to the present time. After this opinion was given, it was further admitted, that the defendants, *James C.* and *George L. Lackland*, had in their hands, at the time the attachment was laid, the sum of ———, which had been received on account of the rents and profits of the lands of the testator, and retained as *Rosetta Beeding's* share of the same; and that since then they have received the further sum of ———, and retained the same, (or paid it over to Mr. *Beeding*,) on the same account. It was also admitted, that of the lands of the testator, one tract called ———, was sold by *Darne* and *D. Lackland* in May 1820, for $2000, and that out of that sum $600, with the interest on that part of the purchase money from the time of the sale, was retained on account of a debt due from the testator, which debt had been either actually paid, or the funds as aforesaid retained for that purpose, and that there was no other debt known or believed to be outstanding against the estate; and that Mrs. *Beeding's* share or interest in the balance of the purchase money was in the hands of *Darne* and *D. Lackland*, the trustees appointed by the act of assembly, and had not been paid over to *Beeding* or Mrs. *Beeding*, or to *James C. Lackland*, but remained in their hands to be paid over to *James C. Lackland*, as her trustee, on the determination of this suit, in case the deed to him from *Beeding* and wife, or the draft and acceptance of the trustees aforesaid, should be sustained as valid against the plaintiff. It was further agreed, that of the lands of the testator some were occupied by the defendants, *George L. Lackland*, and some by *James C. Lackland*, under an agreement with the other heirs to pay rent of ———, annually, and that some of said lands were rented out by defendants to others, and that some were in wood and untenanted. That the said lands lie in this county, &c. and that the yearly value of them is ———, and the gross value of those still remaining unsold is $12,800. Upon this statement, and the affidavits of the defendants, the plaintiff prayed the court to instruct the jury, that the defendants had no right to sett-off against

1825.

Yerby
vs
Lackland

the plaintiff's claim for the rents coming into the defendants' hands after the laying of the attachment, their demand for the $500 stated in their affidavit to have been over paid *Beeding* on account of the personal estate. But the court refused to give the said instruction as prayed, but instructed the jury, that the defendants might retain and apply the said rents, as they came into their hands, to the credit of their said claim, on said *Beeding*. To this refusal and opinion, as also to the opinion before delivered by the court, the plaintiff excepted; and the verdict and judgment being for the defendants, he appealed to this court.

The cause was argued before BUCHANAN, Ch. J. EARLE, MARTIN, and STEPHEN, J.

*F. S. Key*, for the Appellant, contended, 1. That *Beeding's* interest in the land, notwithstanding the act of assembly, was such as to be liable to attachment. 2. That the executors had no right to retain out of his wife's proportion of the rents and profits, for what they had advanced *Beeding*, beyond her fair proportion of the personal estate, even if there was evidence (which there was not,) of their having made such advance.

*Magruder*, for the Appellees, relied on *Shivers vs. Wilson*, 5 *Harr. & Johns.* 130, as conclusive against the plaintiff's recovery.

EARLE, J. delivered the opinion of the court. In the only bill of exceptions filed in this cause, there are two opinions delivered by *Montgomery* county court, unfavourable to the claims of the appellant. In the one the court decide, that the lands attached are not subject to condemnation for the debt of the appellant; and by the other, they refuse on his prayer to instruct the jury, that the defendant had no right to set off against the appellant's claim for rents coming into the defendant's hands after laying the attachment, their demand for $300 stated in their affidavit to have been overpaid *Beeding* on account of the personal estate.

Without examining or adopting the reasons assigned for either of those opinions, this court affirm this judgment.

The appellant was not entitled to have condemnation of any part of the property attached in this case, having

failed to show himself of that description of persons who have a right to issue an attachment under the provisions of the act of 1795, ch. 56. By that act the remedy is confined to citizens of this state, or some other of the *United States*, and it no where appears on the face of this record, that the appellant is either the one or the other. On the contrary it appears, that he resides, and always has resided in *George Town*, in the District of *Columbia*, being neither a citizen of *Maryland*, nor of any other of the *United States*, but a citizen of that district or territory only. The case of *Shivers vs. Wilson*, determined in this court, (5 *Harr. & Johns* 130,) is decisive of this question, being a case in all respects analagous to this. There, as here, the plaintiff in the inferior court is described to be a citizen of the *United States*, without designating him a citizen of *Maryland*, or some of the *United States*, and his case was decided not to be within the provisions of the aforesaid act of 1795, ch. 56.

The appellant here having failed to bring his case within the provisions of that act, the court below were right in deciding that the lands attached were not liable to condemnation for his debt, and in refusing to give any opinion that might enable him to recover.

JUDGMENT AFFIRMED.