## DAVID BARR, GARNISHEE OF ALFRED CLINE, vs. CHARLES M. PERRY.—*December* 1845.

Under the act of 1795, ch. 56, a citizen of *Maryland* is authorised to proceed, by attachment, against any person *bona fide* indebted to him, who is not a citizen of this State, and doth not reside therein. It also prescribes the form of proceeding.

The garnishee, in an attachment cause, may plead in bar, that at time of issuing the attachment, the alleged debtor was a citizen of the State, and residing therein; the non-residence of the debtor in this case, was as essential as his indebtedness.

The plaintiff in an attachment cause cannot, by his affidavit, conclude the garnishee, upon the question of jurisdiction in the court. He may deny, by plea, the truth of facts essential in such affidavit, and thus show the court had not jurisdiction rightfully.

Under the act of 1715, no attachment can issue against a resident defendant, until a second *capias* shall have been returned *non est.*

It has been repeatedly decided, that if the affidavit of the creditor is in any respect defective, its defects may be relied on in any stage of the proceedings.

The necessity of an averment in the affidavit, of the citizenship of the plaintiff, is now done away with by the act of 1834; but whether it be there stated or not, that act requires the plaintiff, at the time of trial, to prove his citizenship.

The affidavit is indispensable, in order to give to a magistrate authority to order an attachment by the clerk of the county court, but when the court gives judgment, it must be because there is legal proof, that the debtor, in the language of the act, is not a citizen of the State, and not residing therein.

At some stage of the proceedings, and in some form or other, the garnishee must have the power of denying the truth of the matters charged in the affidavit.

The design of the attachment law is, as well to protect our own citizens while within the reach of the State's process, against any such summary proceeding, as to give the citizens of the *United States* a remedy against debtors, whose persons are out of the reach of our process, but who have property within our territory and jurisdiction.

The plaintiff in attachment need not file a declaration. The plea of the garnishee is to the writ of attachment, and the business of the plea is, to show why the attachment should be quashed.

By the acts of 1832, ch. 280; 1834, ch. 79; and 1839, ch. 39, there is a departure from what has been called the theory of our attachment laws.

Originally, the simple object of an attachment was, to compel the debtor to give bail, and appear to the ordinary suit, and that object being accomplished, the attachment was necessarily dissolved.

40        v.3

The design of the later laws was to continue to the creditor, who has been obliged to have recourse to this process, the lien, which, by the service of the attachment, he had on the property attached, unless the debtor will give other and better security than that which is afforded by giving bail.

Bail may be given, and at any time might be discharged, by surrendering the principal, and thus the creditor might be deprived of his lien, and have no security for his debt.

The law now leaves the non-resident debtor still at liberty, by giving bail to get the control of the suit, but forbids the dissolution of the attachment, unless bond, with approved security, is offered.

But, these laws relate to non-resident debtors, and must be confined to them: they do not relate to abuse or misuse of the process of the court, and must not be construed to apply to suits against residents.

The act of 1834, ch. 79, is confined to debtors non-resident of the State.

The act of 1839, ch. 39, extends the provisions of the act of 1834. It includes absconding debtors, and is for the benefit of a plaintiff, or plaintiffs, one of whom resided within the State; and, moreover requires, that the defendant, or some one of the defendants, should have been a citizen of the State, at the time when the contract was made, or the debt or damages accrued, upon which an an attachment may issue.

If the plaintiff intended to avail himself of the act of 1839, in answer to the plea of the garnishee in this case, he should have made it the subject of a replication.

Where an attachment was granted to compel an appearance, on the ground, among others, that the defendant was a non-resident, and he was arrested, appeared, and gave bail to the action, this does not dissolve the attachment as formerly. Both cases will be in court, viz: that against the defendant, as well as that against the garnishee. The defendant will get the conduct of his own suit. The plaintiff may get judgment in both. The proper course will be to delay the trial of the attachment, until a trial is had against the debtor defendant.

The court is not precluded, by these later acts, from ascertaining the truth, and giving the alleged debtor relief, if his property has been wrongfully seized.

The decision of the county court, permitting the garnishee in an attachment cause, to file pleas in bar, and to the merits, is not the subject matter of an appeal.

APPEAL from *Washington* county court

This was an *attachment,* sued out on the 14th January 1843, upon two promissory notes of *Alfred Cline,* payable to the appellee, and upon an account for money, lent to said *Cline* by him. The affidavit declared, that "*Charles M. Perry* did also make oath, that he is credibly informed, and verily believes, that the said *Alfred Cline* is not a citizen of the State of *Maryland,* and doth not reside therein."

An attachment was awarded and issued, and returned, "levied upon the credits of *Cline*, in the hands of the appellant, to amount of," &c.

The garnishee appeared, and pleaded :—

1st. *Non assumpsit* by *A. C.*

2nd. *Nulla bona* of *A. C.* in his hands.

3rd. That at the time of issuing and suing forth the writ of attachment in this case, he, the said *Alfred Cline*, was a citizen of this State, and resided therein, &c.

4th. That at the time of the date, and issuing of the writ of attachment in this case, against the said *Alfred Cline*, to wit, on the 14th day of January 1843, and for a long time immediately before the issuing and suing forth said writ of attachment, the said *Alfred Cline* was a citizen of the State of *Maryland*, and resided therein; and that the said *Alfred Cline* was taken by the sheriff of *Washington* county, under and by virtue of the writ of *capias ad respondendum*, which issued on the 14th day of January 1843, with the said writ of attachment against him, the said *Alfred Cline*, and to the said sheriff directed, and the said *Alfred Cline*, being so in the custody of the sheriff of *Washington* county, and under and by virtue of said writ of *capias*, appeared in the *Washington* county court to said writ or action, and gave and entered special bail to said action, and this the said garnishee is ready to verify, wherefore, &c.

5th. That the said *Alfred Cline* was arrested and taken by the sheriff of *Washington* county, under and by virtue of the writ of *capias ad respondendum*, which issued on the 14th day of January 1843, with the said attachment in this case, against the said *Alfred Cline*, and to the said sheriff of *Washington* county directed; and the said *Alfred Cline* being so in the custody of the said sheriff, by virtue of the said arrest, under and by virtue of the said writ of *capias*, appeared in the *Washington* county court, where said action was pending, and to which court said writ of *capias* was made returnable, and thereto obtained his release and discharge from the custody of the sheriff, aforesaid, gave special bail to said action, and this the said garnishee is ready to verify, wherefore, &c.

Issues were made upon the 1st and 2nd pleas, and the plaintiff demurred generally to the 3rd, 4th and 5th pleas in bar, and there was a joinder in demurrer. The county court, (T. BUCHANAN, A. J.,) sustained the demurrers, and awarded judgment of condemnation of the credits of *A. Cline,* upon those pleas.

EXCEPTION. At the trial of this cause, the defendant offered to file the following pleas, before mentioned, which were set out at length in the exception.

The plaintiff objected to right of the defendant, *David Barr,* to plead the matters contained in the said pleas, by reason of an agreement made between the counsel of the parties in the principal suit, *without the privity or consent of the said garnishee,* at the November term last of this court, which is in the words and figures following, viz :—

"It is agreed, by and between the counsel of record in the above cases, (there being various garnishees, and a case against each docketted,) and whose names are signed to this agreement, both for the plaintiff and the defendant, with the assent and authority for that purpose, given to the said counsel by the plaintiff and defendant in said cases, that the said cases shall be entered continued to the next court, on the following terms, to wit: Should not the full amount of the plaintiff's claim in said cases, as evidenced by the promissory notes of said *Alfred Cline,* filed in said cases, and all costs of said cases be paid to the said plaintiff, or his attorneys, or otherwise satisfactorily arranged with said plaintiff, or his attorneys, by the first day of the next March term of said court, then, and in that event, judgment of condemnation shall be entered by said court, condemning the property attached for the payment of said claim of the plaintiff, and all costs. It is also further agreed and understood, by and between said parties, acting by their counsel aforesaid, that the said claim of said *Perry,* shall be in no way reduced by any set off or discount, to be urged or pleaded by said *Alfred Cline,* except what may be admitted by said plaintiff, or his attorneys. And it is further agreed, that the said *Alfred Cline* shall, at the next term of said court, interpose no difficulty whatever, or obstacle, to a judgment of con-

demnation against the property and credits attached, by virtue of the attachment issued in said case, to the amount of the said claim of said *Perry.* It is also agreed, that the said *Perry* waives all claim for the money, charged as loaned, in the statement and affidavit filed in said cause, and any other claim, except what arises from said notes."

The plaintiff, upon the reading of this agreement, prayed the court to reject the said pleas, except the plea of *nulla bona,* upon the ground, that all the other pleas were offered by the garnishee on behalf of the said *Alfred Cline,* the principal defendant, who, by his said agreement, had precluded himself from filing the said pleas. But the court, (T. BUCHANAN, A. J.,) overruled the said objection, and permitted the said garnishee to file the said pleas. The plaintiff excepted.

The garnishee prosecuted this appeal.

The cause was argued before ARCHER, C. J., DÓRSEY, CHAMBERS, MAGRUDER and MARTIN, J.

By PALMER and McMAHON for the appellant, and
By GEORGE SCHLEY and W. PRICE for the appellees.

MAGRUDER, J., delivered the opinion of this court.

In deciding the questions which arise in this case, it is to be assumed, that the defendant in error, is a citizen of *Maryland,* Being so, the act of Assembly, 1795, ch. 56, authorises him to proceed, by attachment, against any person *bona fide* indebted to him, who is not a citizen of the State, and doth not reside therein. It also prescribes the form of proceeding.

The affidavit upon which the attachment in this case was issued, states, that the defendant in error, is credibly informed, and verily believes, "that his debtor, *A. Cline,* is not a citizen of the State, and does not reside therein." The attachment was laid in the hands of the plaintiff in error, who appeared to show cause why the property of this debtor, which was according to the return of the sheriff, in his hands, should not be condemned. With other pleas, the garnishee pleaded, that at the time of the issuing of the attachment, the alleged debtor

was a citizen of the State, and residing therein. To this plea the defendant in error, put in a general demurrer, which was sustained by the court, and the first question is, whether there be not error in this?

To warrant the proceeding by attachment in this case, the non-residence of the debtor, is as essential as his indebtedness. It was because he was alleged to be a non-resident, that the defendant in error, was enabled to obtain the attachment. If, then, it be true, as the garnishee in this plea alleges, that the debtor was a citizen of the State, and residing therein when the attachment was issued, then the proceeding was *in fraudem legis*. The demurrer to the plea admits, that the debtor was a citizen of the State, and residing therein when the attachment was issued. If so, it is a case in which the court below had no jurisdiction, unless the defendant in error, can give to it jurisdiction by his affidavit, admitted to be untrue in this respect.

It is insisted, however, that although the proceedings in this case be in violation of law, and although of this case, the court had not rightfully jurisdiction, yet, of this, the garnishee cannot avail himself. "Such a doctrine, (said a court of a sister State,) is attended with the most pernicious consequences. The parties who issued the process, are bound to support it, when it is attacked." 2 *Yeates*, 277. Such a doctrine is not easily to be reconciled with the law, as expounded by this court. "He, (the garnishee,) is a party to the attachment, and can, at all times, plead to it, and object to its illegality or irregularity." 10 *G. & J.*, 386. Such a doctrine, puts it in the power of a creditor to repeal, in effect, so much of the law of 1715, as declares, that no attachment shall issue against a defendant residing in the State, until a second writ shall have been returned *non est*, because if the pretended creditor chooses to swear, that he is "credibly informed, and verily believes his alleged debtor to be a non-resident, that non-residence could never afterwards be denied, either by the debtor himself, or by his garnishee, who is bound to protect the effects in his hands, until the law makes it his duty to surrender them to a stranger."

When, in the Supreme Court of *Vermont,* it was urged by counsel, that "the trustee, (garnishee,) is summoned, for the sole and only purpose of disclosing, whether or not he had in his hands the effects of the debtor," the court correctly replied. "as a general rule, and at common law, a man can have no legal proceedings taken against him, in relation to his debts and dealings, except by his creditor." This is a right and privilege of no inferior importance. That a man should be called into court, and there subjected to personal examination, upon oath, in relation to his debts and dealings with third persons; a proceeding which, even, those third persons could not themselves take, especially in a court of law, is not to be suffered, but in cases of imperative necessity, and by express and clear law. This statute clearly interferes with the common law rights of the trustee, (garnishee,) in many important particulars. It subjects him to the process of a stranger, with whom he has no privity. It calls him into court, when his creditor does not desire it. It subjects him to personal disclosure. 9 *Vermont Reports,* 273. See also 1*st Green's N. J. Reports,* 131, 250.

Surely, when an individual is subjected to all this, and is brought into court, to show cause why he should not pay the debt of another person, because to that person he may be indebted, he must have a right to show, that this proceeding, which is clearly in derogation of his common law rights, is a proceeding forbidden by the law; he must have a right to deny the existence of facts, which the statute, itself, declares must exist, in order to give jurisdiction to the court. Is it true, that here, although the supposed debtor of another person is not to be harrassed, and the property of debtors is not to be seized, but in cases of imperative necessity, yet, the creditor, himself, by swearing to that which is untrue, can produce those evils, and the law is powerless to afford relief to persons who are thus wronged and oppressed? The garnishee, we are told, is precluded from questioning the jurisdiction of the court, although its want of jurisdiction is admitted by the plaintiff; and the debtor certainly cannot, after he has appeared to the suit, in order to resist what he may deem to be an unjust demand, and to save his property from sacrifice.

It has been repeatedly decided by this court, that if the affidavit of the creditor is in any respect defective, its defects may be relied on in any stage of the proceedings. See 6 *H. & J.,* 446. 5 *H & J.,* 133. Surely, the motion to quash the attachment, may be made by the garnishee, as well as by any other person, and when he makes these objections, and directs the attention of the court to any defect in the proceedings, is he not showing cause why the goods of the debtor, in his hands, shall not be wrested from him, to pay the supposed debt on which the attachment is issued? He may then show cause, even although he has effects of the debtor in his hands.

But, in this case, the objection is not to the form of the affidavit. It does state the debtor to be a non-resident, and it is insisted, that the affidavit, in this respect, is not to be contradicted.

The creditor, then, is allowed to prove this all essential point, by swearing that he is credibly informed, and verily believes it to be true, although no disinterested witness would be allowed to state what he was credibly informed, and though he verily believed it to be true. Now, it would be difficult to prove, that so much of the affidavit as relates to the debtor, not being a citizen of the State, nor residing therein, is incontrovertible, and, yet, that the truth of the residue of the affidavit may be questioned. In the residue of the affidavit, he is required to speak positively; he is testifying to what he is required to know, not to what he believes to be true. Yet, it can scarcely be pretended, that the affidavit furnishes conclusive evidence of the amount of indebtedness, or that the creditor is a citizen of one of the States, territories or districts.

In the case of *Dawson vs. Brown,* 12 *G. & J.,* 53, it was decided, that the creditor is not bound to produce before the judge or justice, all the written evidence which may be in his possession, and which might be used before the jury, to establish the debt, and entitle him to a condemnation of the property attached. The affidavit, then, so far as it relates to the amount of indebtedness, or would prove any indebtedness, is not conclusive, and why should that part of it, in which the creditor swears, touching what he does not pretend that he knew, be

treated, as would be a record, against which there can be no averment?

It is unnecessary here, to collect the various cases in which, in the trial of the attachment, (the creditor against the garnishee,) the creditor was defeated, because he omitted to prove to the jury, that he was a citizen of the State, district or territory, of which he professes to be a citizen. See the case, *Mandeville vs. Jarret*, 6 *H. & J.*, 497; and also, see 6 *G. & J.*, 243. The want of such an averment in the affidavit, is now rendered unnecessary, by the act of 1834, ch. 79, but whether it be stated in the affidavit or not, that act of Assembly requires him, at the time of trial, to prove his citizenship. Now, why is it, that this court has so often decided, that on the plea of *non assumpsit*, simply, the verdict of the jury must be for the defendant, unless the plaintiff proves, that at the time of the issuing the attachment, he was a citizen of one of our States, territories or districts? Is it not to entitle him, by judgment of the court, to a condemnation of the property attached upon the simple finding of the jury, that a third person, not before the court, is indebted to the plaintiff the ascertained amount? Must it not be, that to entitle him to a judgment against the garnishee, he must prove to the jury, not simply the amount of another person's indebtedness, but a right, in the attachment case, to recover judgment?

The affidavit of the creditor is not required, in order to furnish him at the time of the trial, with proof of his claim, or of the citizenship of the plaintiff, or of the non-residence of the debtor. This affidavit, stating in connection with other matters, the non-residence of the debtor, is indispensable, in order to give to the magistrate authority to order the attachment, but when the court gives judgment, it must be because there is legal proof, that the debtor is, (not *believed* to be, but *is*,) in the language of the act, not a citizen of the State, and not residing therein.

How can the garnishee, at all times, object to the illegality, as well as irregularity of the attachment, (as is said in 10 *G. & J.*, 286,) but by denying, or putting the creditor to the proof, by legal testimony, of his own citizenship, the indebtedness

alleged, and the non-residence of the debtor? The argument about the affidavit, and its conclusiveness to establish all or any of the facts stated in it, might be urged with equal success, to prove, that if the creditor makes the affidavit required by another (the 5th,) clause of the act of 1795, the garnishee would no longer be at liberty to insist, that he had no effects in his hands.

At some stage of the proceedings, in some form or other, the garnishee, (having a right to object at all times to its illegality, as well as irregularity,) must have the power of denying the truth of the matters charged in the affidavit. The law would, otherwise, defeat one of its manifest objects. Its obvious design is, as well to protect our own citizens, while within the reach of its process, against any such summary proceeding, as to give to citizens of the *United States*, a remedy against debtors, whose persons are out of the reach of its process, but who have property within its territory or jurisdiction.

The question, then, would seem to be, whether the defendant had a right to make the objection to the plaintiff's recovery, in the manner he did? It may be said, that such a plea is unnecessary, because the plea of *non assumpsit* would have answered. In the first place, it may be remarked, that upon the strict rules of law, the plaintiff has no right to insist. He has filed no declaration, and need not to file one. Whether filed or not, the plea is and must be to the writ, 4 *H. & J.*, 185; and the business of the plea is, to show why the attachment should be quashed. Why condemnation should not be had of the goods and chattels, &c., in the hands of the garnishee. If the plea sets forth anything, which, if true, proves that the attachment was not legally issued, it is a full and complete defence.

It may be said, that it amounts to the general issue. We are told, that when the defence consists of matters of law, it may be pleaded specially, though it may be admitted in evidence, under the general issue. A release, coverture, infancy, or payment, may be pleaded specially in *assumpsit;* though any of these matters may be given in evidence, under the plea of *non assumpsit*. But, even if it was not strictly admissible, it is a

defect in form merely, and can be taken advantage of only on special demurrer. *Archbold on Pleading*, 196.

This plea seems to be authorized by the *Vermont* case, already referred to, and a case in 5 *Connect. Reports*, 118, with which, also, we have been furnished by the counsel for the plaintiff in error.

But, what ground is there for this objection? In *Campbell vs. Morris*, 3 *H. & McH.*, 552, *Judge Chase* said, that the attachment, until dissolved by bail and appearance, is a summary process, and while its nature remains unchanged, every fact is cognizable by the court, which will not only quash it for any irregularity, or, (speaking with reference to the case before him,) "which will show, that the property attached, does not belong to the defendant, and evidence, *dehors* or extrinsic, to the proceeding, may be resorted to, in order to prove the want of title to the property attached."

If proof of that fact was admissible, surely proof of any other fact, which shows that the plaintiff has been guilty of an abuse of this summary process, that he obtained the order for the attachment, by falsehood and fraud, cannot be rejected.

In the same case, (553,) speaking of a fact alleged to exist in the case, to wit, that *Robert Morris* is a citizen of *Pennsylvania*, he added "the court are of opinion, that proof of that fact can be received on the attachment."

*Judge Chase* was of the opinion, that the proof was to be made to the court, because the proceeding is summary, and without the intervention of a jury. Now, if in this latter respect, the practice had not undergone some change; if the proof was to be offered to the court, yet this plea proposes to prove that fact, and in this summary, irregular proceeding, the suggestion may be made to the court, in the form of a plea, as well as of a motion. It was stated, that the alleged non-resident debtor, was, in truth, a citizen, and the fact was admitted by the plaintiff. If the question was to be decided by the court, then the case was ready for its decision.

But, the truth is, that courts of more modern times, have not been so partial to the old practice of trying facts, without the intervention of a jury, even in these summary proceedings.

The several cases of *South Carolina,* which have been cited, seemed to have turned principally on the question, not whether the fact was triable at all, but whether it was proper for the court to try it.    One of the judges observed, of the old practice, "a short hand method of quashing by motion, a remedy given by law, would place in the hands of the court a dangerous power.    An attachment can only be considered in the light of a suit or action of law, and like all other legal remedies, its want of propriety or efficacy, must be made to appear in a regular course of proceeding."    (2 *Nott & McCord's Reports,* 132.)    And in the latest decision in that State, to which we have been referred, (*2nd Hill's Reports,* 631,) upon affidavit, that the defendant was within the State at the time the attachment was levied, it was set aside, "although," said the judge, "in a case where the fact was doubtful, the court would not interfere."    This is the doctrine of a State, which is accustomed to require the creditor, in order to obtain an attachment, to give bond, to be answerable for the damages which the defendant may sustain, by any illegal conduct, in obtaining such attachment.

In *Maryland,* it ought not to be doubted, that these facts, if disputed, may be submitted to a jury, and, therefore, may be pleaded.    The court cannot sustain this demurrer, without reversing much that is now considered settled law in this State.

A demurrer was filed to a plea, in which the plaintiff in error, after alleging, that the debtor was a citizen of *Maryland,* at the time of the issuing of the attachment, proceeds, "and he, the said *A. Cline,* was taken by the sheriff of *Washington* county, under and by virtue of the writ of *capias ad respondendum,* which issued, with the writ of attachment, to said sheriff directed, and the said *A. Cline* being in custody of the sheriff, under the said writ of *capias ad respondendum,* appeared in *Washington* county court, and gave bail."

If this be true, and so the demurrer admits, then, according to the old decisions, the attachment was dissolved, even although it was regularly and properly issued against a debtor, who at the time was a non-resident.    Of course, the garnishee in this plea, shows cause why the writ should be dissolved.    But the

old law has undergone some change. Besides the act of 1832, ch. 280, with which at present, we have no concern, we have the acts of 1834, ch. 79, and 1839, ch. 39, which it is insisted, require a bond in this case, before the attachment can be dissolved.

It is obvious, that in these acts of Assembly, there is a departure from what has been called the theory of our attachment laws. Originally, the simple object was to compel the debtor to give bail, and appear to the ordinary suit, and that object being accomplished, the attachment was necessarily dissolved. The design of these last mentioned laws, was to continue to the creditor, who has been obliged to have recourse to this process, the lien, which, by the service of the attachment, he had on the property attached, unless the debtor will give other and better security than that which is afforded by giving bail. Bail may be given, and at any time may be discharged, by surrendering the principal, and thus the creditor may be deprived of his lien, and have no security for his debt. Hence, the law leaves the non-resident debtor still at liberty, by giving bail, to get the control of the suit, but forbids the dissolution of the attachment, unless bond, with approved security, is offered. But, these laws relate to attachments against non-resident debtors; (the act of 1839, includes absconding debtors,) and must be confined to them. They do not relate to cases in which there has been an abuse or misuse of the process of the court. They must not be construed to apply to suits against residents, and unless "the court can superintend and control the writ, by keeping it within the design and intent of the act, it becomes an engine of great oppression and abuse."

The act of 1834, unquestionably, does not embrace the case before us. It is confined in its provisions to debtors, not resident in the State, and the plaintiff, in this case, by demurring to the plea, admits, that the debtor resided in the State at the time the attachment was issued.

The act of 1839 extends the provisions of the act of 1834. The former law, however, is for the benefit of a plaintiff or plaintiffs, one of whom resided within the State, and moreover requires that the defendant, or some one of the defendants,

should have been a citizen of the State, at the time when the contract was made, or the debt or damages accrued.

If the plaintiff, in this cause, intended to avail himself of the provisions of this law, he should, in a replication, have brought himself within them.

The last demurrer requires us to assume, that the debtor was a non-resident; and if so, the statute says, the attachment shall not be dissolved unless the defendant gives bond, with good security. The circumstance, that he has given bail and appeared, does not dissolve an attachment issued against a non-resident. The law had been so, but thus far is altered by the legislature; he has still a right to give bail and appear, and thereby get the conduct of his own suit; but if he be a non-resident, the bail and appearance will no longer dissolve the attachment. Both cases will be in court. The plaintiff may get judgment in both, and the proper course will be to delay the trial of the attachment, until a trial is had in the other case.

The court, then, is not precluded from ascertaining the truth, and giving the alleged debtor relief, if his property has been wrongfully seized.

The affidavit is not conclusive. The fact of non-residence may be enquired into. The great purposes of the act, said the Supreme Court of *New Jersey*, in the case 1*st Green*, 134, are, by seizing the property of a debtor, to compel his appearance, to answer the demand of the plaintiff; when from non-residence or flight, he is beyond the process of our judicial tribunals, and on his failure of appearance, to apply such property to the just end of satisfying his debts. An attachment is an extraordinary, not an ordinary writ. To use it when the debtor is within the reach of ordinary process, is wholly inconsistent with the spirit and design of this mode of procedure.

We should not be disposed to say, that the court below acted wrong in receiving the pleas, but from such a decision it is not the right of a party to appeal to this court.

1st and 2nd demurrer overruled, and judgment reversed; 3rd demurrer and exception affirmed, and

JUDGMENT FOR THE APPELLANT, WITH COSTS.