(Decided December 3rd, 1862.)

JACOB RISEWICK *vs.* GEORGE DAVIS, Garnishee of JAMES FORWOOD.

By the more recent decisions of this State, it is declared that the design of the attachment laws is to protect our own citizens from summary proceed-ings, as well as to give them, and the citizens of the United States, a remedy against debtors residing out of the reach of the process of Court.

The jurisdiction of the Court, in cases of attachment, is a special, limited jurisdiction, conferred by Acts of Assembly, where its power to act must appear on the face of the proceedings, or be proved at the trial.

The great purposes of our attachment laws are, by seizing the property of a debtor, to compel his appearance to answer the demand of the plaintiff, when, from non-residence or flight, he is beyond the process of our judicial

tribunals, and, on failure of appearance, to apply such property to the just end of satisfying his debts.

An attachment is an extraordinary, not an ordinary writ. To use it when the debtor is within the reach of ordinary process, is wholly inconsistent with the spirit and design of this mode of procedure.

The attachment upon warrant, under the Act of 1795, ch. 56, cannot lawfully issue, without an affidavit that the debtor "was not a citizen of the State, and not residing therein," or that being a citizen, "he is actually run away, absconding or removed from his place of abode;" if it does not contain this averment, it is substantially defective, and the judgment of condemnation, upon appeal, will be reversed, and the attachment quashed.

The Act of 1750, ch. 40, is prohibitory only as respects residents, &c.; it is silent, "*eo nomine,*" as to foreigners, but it has been decided, that under that statute attachments would lie against foreigners, whether they were residents of the State or not.

The meaning of the word "*citizen,*" in the Act of 1795, ch. 56, is synonymous with "*inhabitant or permanent resident;*" all such are alike entitled to the most enlarged remedial process and protection from summary proceedings, whether native or adopted citizens, enjoying the elective franchise, and right of purchasing and holding real estate. This construction does not conflict with the provisions of 1715, ch. 40, but gives a cumulative remedy, adapted to the exigencies of trade and commerce, which would be otherwise much embarrassed by the delays of the law.

The question of citizenship, in the purview of these Acts, is a mixed question of law and fact, to be found by the jury, under the direction of the Court.

If "residing and doing business in the State" constitute a defendant, at the time he absconds, a citizen in contemplation of our attachment laws, *not* residing and *not* doing business in the State at the time of issuing the attachment, would necessarily bring the defendant within the opposite class of persons described in the Act of 1795, ch. 56, sec. 1, as not being citizens of this State, &c.

There being no express provision in the Act of 1854, ch. 153, as to when it should take effect, by the 31st sec. of Art. 3, of the Constitution, its operation was suspended until the 1st of June 1854, and did not affect pending cases.

In a case of attachment on warrant, the plea being "that the debtor was a citizen of Maryland, and not liable to attachment," the declarations of the debtor, offered to show an "*animus revertendi*" at some indefinite period, are not admissible.

In such a case, where the debtor has been absent from the State four or five years, working as a contractor in the construction of railroads in an ad-

Risewick *vs.* Davis, Garn. of Forwood.

joining State, it not appearing that he might not be absent as many years longer, the declarations of the debtor offered to show that he had not abandoned his home or domicil in the State, are not admissible.

Where the prayer was,—"That if the jury believe, from the evidence, that the debtor had his home in Maryland, and left the State for temporary purposes, but with an intention to return to it, that such a change of place was not, of itself, in law, a change of domicil:" HELD, that upon an issue of domicil, absence from one's domicil for a temporary purpose, attended with an *animus revertendi*, will not amount to a change of domicil. The subject of inquiry, however, being "commercial citizenship," such an instruction, without qualification, has a tendency to mislead the jury.

APPEAL from the Circuit Court for Harford county.

This is a case of an *attachment on warrant*, issued May the 2nd, 1854, by the appellant, to bind the property and effects of James Forwood. The attachment was laid in the hands of George Davis, who appeared and pleaded three pleas, two of which were ruled bad on demurrer. To the third plea, which was that Forwood was a citizen of Maryland, and not liable to attachment, issue was taken, and joinder. The case was tried the 18th of November 1858.

*1st Exception.*—At the trial of the cause, the defendant proved that in 1847, James Forwood was a citizen of Maryland, residing in Harford county, with a family, consisting of his wife, his mother-in-law, his sister-in-law, and his four children, and there kept house and carried on a farm; that in 1847, he left said State and went to Pennsylvania, his family remaining and occupying the same house and farm; that while making his preparations to go to Pennsylvania, he declared to his family physician, and to several other persons in the neighborhood, his fixed intention to retain his home and residence in Maryland, and to return from time to time, for the purpose of voting at elections; and at various other times, before the issuing of the attachment in this case, he expressed the same intention, and spoke also of his intention to return home when he should have completed the business for which he left the State.

To these declarations of Forwood, the plaintiff objected as inadmissible, but the Court (PRICE, J.,) overruled the objection, and the plaintiff excepted.

The defendants also proved that Forwood was in Harford county, for a few days at a time, on several occasions, between 1847 and the 2nd of May 1854; that he voted there in 1850, and was at the polls at other times; that in January 1853, he was in Harford county, negotiating for the purchase of a farm, and in the Spring of said year was also in said county, and, with J. McCausland, purchased a farm therein, an undivided moiety of which he still owns; that he went to Pennsylvania to work as a contractor upon a railroad, and had several contracts in succession for making railroads in different parts of said State; and that on several occasions, when he had completed his contracts, he sold his carts and horses, and packed up his goods. The defendant further offered in evidence the declarations of Forwood, made on such occasions, that it was his purpose to return to Harford county, and that he was detained in Pennsylvania by new contracts, and by some difficulties in getting the money for the work he had done. To the admissibility of these declarations as evidence, the plaintiff objected, and the objection being overruled, excepted.

The defendant further proved, by S. S. Johns, that during Forwood's absence, he was his agent to attend to his affairs, and in that capacity supplied Forwood's family, from time to time, with grain and provisions, and paid the rent for the house occupied by them the year preceding their removal to the farm purchased by Forwood and McCausland, in 1853, and assisted in removing them and the furniture to said farm; and that when Forwood employed him to act as his agent, he told him that he wished him to continue as his agent until he returned home, and always spoke of Harford county as his home. The plaintiff objected to the admissibility in evidence of the said declara-

tions of Forwood, but the Court overruled the objection, and the plaintiff excepted.

The defendant further offered in evidence a bill of sale from the said James Forwood to John W. Massey, dated the 19th of February 1850, in which is the recital, "I, James Forwood, of Harford county, and State of Maryland," &c.; and also proved that Forwood owned the farm on which he lived before going to Pennsylvania, until 1850, when it was sold by a trustee.

The plaintiff then proved that the wife of said Forwood went to Pennsylvania in 1850, and died there a short time afterwards; that two of his children also went to him in Pennsylvania, one of them in 1852 or 1853, and the other some time after, in 1853, the first of whom married and remained there, and the latter, who went on a visit to her father, remained there until 1857, when she returned with him to Maryland; that said Forwood married again in Pennsylvania, prior to 1853, and he and his wife and two children lived for some time with his father-in-law; that he sometimes boarded, and for a month or two kept house; and that he brought his second wife to Maryland in 1857.

The plaintiff's witness, Laura Forwood, being then cross-examined by the defendant, proved that when the children of Forwood went to Pennsylvania, he was boarding; that he continued to board sometimes at Washington, Pa., sometimes near that town, sometimes at Greensburg, and sometimes at Pittsburg, as his business on the railroad required; and that when he went to house-keeping, it was in consequence of the breaking up of the boarding-house at which he was then staying; that he frequently expressed his intention of returning to Maryland, and spoke of it as his home; that his second wife often urged him to settle in Pennsylvania, but that he always refused, because, as he said, it was his intention to go back to Maryland, when he finished his work upon the railroads.   To these declara-

tions of Forwood the plaintiff also objected, and the objection being overruled, excepted.

The plaintiff then proved that when Forwood left Maryland, he was indebted to various persons, and that an attachment on warrant issued against him, at the suit of P. W. and B. Silver, and judgment of condemnation thereon was entered in the Circuit Court for Harford county, at November term 1853; and that during the whole time of his stay in Pennsylvania, he was engaged in the business of constructing railroads there.

The defendant then offered rebutting evidence, to the effect that Forwood's first wife went to Pennsylvania in 1850, by the advice of her physician, with the avowed intention of returning in a few weeks, being at the time in delicate health; that she and the two daughters who afterwards went to Pennsylvania, had continued to reside up to that time, with the rest of Forwood's family, in the same house where said Forwood had lived, in Harford county, with the same furniture, stock and farming utensils; that the farming operations were carried on in his name, and at his expense; and that when the family, consisting of his mother-in-law, his sister-in-law and youngest child, removed to the farm in 1853, they carried with them the same furniture before spoken of, and that they have remained there, and have been supported by him since that time.

The defendant thereupon prayed the Court to instruct the jury: "That if they believe, from the evidence, that said Forwood had his home in Maryland, and left the State for temporary purposes, but with an intention to return to it, that such change of place was not, in itself, in law, a change of domicil, and he did not thereby cease to be a citizen of this State." Which instruction the Court gave to the jury, and the plaintiff excepted.

The plaintiff thereupon prayed the Court to instruct the jury as follows: "That if the jury shall believe, from the

evidence, that James Forwood, the defendant, left this
State in the year 1847, to work on a railroad in the State
of Pennsylvania, and remained there, and absent from this
State, with the exception of a few visits of short duration,
until the year 1857, and that two of his children, in the
year 1853, or before, went to and lived with him there
until his return to this State, in 1857, and that before
the year 1853, he married a second wife in Pennsylvania,
and lived with her there until 1857, and that during the
whole period of his absence, the said Forwood was engaged
in business in the State of Pennsylvania, and for a month
or two kept house there, and boarded himself, wife and
children for the residue of the time of his absence, and
shall also believe that an attachment was issued against
the said Forwood at the suit of P. W. and B. Silver, and
judgment of condemnation was entered thereon at the No-
vember term 1853, of the Circuit Court for Harford county,
that then the jury may find that Forwood was not a citizen
and resident of this State, in the meaning of the attach-
ment laws of this State, although the jury may also believe
that the said Forwood did intend to return to this State at
some indefinite period." The Court refused to give this
instruction as prayed, to which refusal the plaintiff ex-
cepted. The verdict and judgment were for the defendant,
and the plaintiff appealed.

The cause was argued before BOWIE, C. J., and BARTOL,
GOLDSBOROUGH and COCHRAN, J.

*Otho Scott,* for the appellant:

1st. The declarations of Forwood ought not to have been
admitted in evidence, because they were the declarations of
an interested party, and not admissible as part of any *res
gesta.* Declarations of an intention to perform a future
act, are never part of the *res gesta.* The declarations offered

in evidence and admitted, were not such as to give character to any act which the party was doing at the time the declarations were made. *Enos vs. Tuttle*, 3 *Conn.*, 250.

2nd. The prayer of the appellee ought not to have been granted, because it was calculated to mislead the jury, inducing them to believe that if Forwood retained his domicil in this State, he was not liable to attachment; when, in fact, he might have his domicil here, and still, by absence from the State, be such a non-resident as would subject his property to attachment. The law of the prayer is wholly inapplicable to our attachment laws. A citizen, within the meaning of those laws, has no reference to the political rights of the party, as a citizen. *Field vs. Adreon*, 7 *Md. Rep.*, 209. *Haggart vs. Morgan*, 1 *Selden*, 422.

3rd. The prayer of the appellant ought to have been granted, because the jury, if they believed the facts stated in the prayer, might have found that Forwood had absented himself from the State, and placed himself beyond the reach of the process of the Courts for such a length of time as not to be a citizen, in the meaning of the attachment laws. See authorities above cited, and the Acts of 1795, ch. 56, and 1715, ch. 40. The Act of 1715, ch. 40, does not use the word *citizen.* The Act of 1795, ch. 56, uses the word evidently as a synonyme for *resident.* The Act of 1854, ch. 153, uses the words *persons* or *non-residents.* The passages from *Story*, relied on by the appellees, are not applicable here. He was writing upon a different question, as to natural and local allegiance. The case in *Selden* is a strong authority in favor of our attachment laws, as to the meaning in which the word citizen is used in them.

All the attachment laws being in *pari materia*, must be taken together. The Legislature did not mean to restrict the remedy by attachment by the Act of 1795, it was only intended to facilitate the issuing of the attachment, and to

expedite its operation.   The practice under that statute has been in conformity with this view.

As to the declarations of the wife, they are clearly inadmissible upon every ground.

*H. W. Archer*, for the appellee :

1st.  The declarations of Forwood were properly admitted, because they were declarations accompanying his acts of removal and remaining out of the State of Maryland.   The residence of a party is a mixed fact, made up of the act of removing to and remaining in a place, and the intent accompanying those acts.   The declarations are properly admissible to indicate and explain the intentions of the party.

2nd.  If Forwood retained his domicil in this State, although he might be liable to attachment as an absentee, he was not liable to be proceeded against under the Act of Assembly, and by the form of proceeding, on which this attachment is based.   The Act of 1854 does not apply to this case, because the attachment was issued before this law took effect.   The Act of 1715, ch. 40, authorized attachments against *all persons* absent from the State, and the appellant should have proceeded under this Act, and not under the Act of 1795, as they have done.   By the latter Act, citizens and residents are exempted from its operation.   5 *H. & J.*, 130, *Shivers vs. Wilson.   Story's Conflict of Laws*, secs. 47 and 48.

3rd.  The prayer of the appellant was properly rejected, because it was calculated to mislead the jury, and did not correctly state the law applicable to the case.   We contend, that if Forwood held his domicil here in Maryland, he could only be proceeded against by attachment under the Act of 1715, ch. 40.   That he could not be proceeded against under the Act of 1795, because that Act expressly excepts from its operation both citizens and residents of

this State, including both political and commercial citizens. *Shivers vs. Wilson*, 5 *H. & J.*, 130. *Field vs. Adreon*, 7 *Md. Rep.*, 209.

BOWIE, C. J., delivered the opinion of this Court:

Our jurists differ in their views of the policy of the process by attachment. In the earlier decisions, it is said to be only a process to compel the appearance of the defendant, not derogatory to, but rather in mitigation of, the severity of the common law process of attachment, and distress infinite and outlawry, which was attended with forfeiture of goods. *Vide Barney vs. Patterson*, 6 *H. & J.*, 182.

In the more recent opinions, it is declared, the design of these laws is to protect our own citizens from summary proceedings, as well as to give them and the citizens of the United States a remedy against debtors residing out of the reach of the process of the Court. 3 *Gill*, 241. *Ibid.*, 326.

It is admitted, on all hands, to be a special, limited jurisdiction, distinct from and not embraced by its general jurisdiction, conferred by Acts of Assembly on the Court, where its power to act must appear upon the face of the proceedings, or be proved at the trial. 1 *Gill*, 381, *Boarman vs. Israel & Patterson*.

This Court, in *Barr vs. Perry*, 3 *Gill*, 326, quoting with approbation from 1 *Green.*, 134, say: "The great purposes of the Act are, by seizing the property of a debtor, to compel his appearance to answer the demand of the plaintiff, when, from non-residence or flight, he is beyond the process of our judicial tribunals, and on failure of appearance, to apply such property to the just end of satisfying his debts. An attachment is an extraordinary, not an ordinary writ. To use it when the debtor is within the reach of ordinary process, is wholly inconsistent with the spirit and design of this mode of procedure."

In some other cases, the Acts directing the manner of suing out attachments and limiting the extent of them, have received a strict construction, as in *Shivers vs. Wilson,* 5 *H. & J.,* 130; *Yerby vs. Lackland,* 6 *H. & J.,* 466, 497; where the right to an attachment was held to be confined to citizens of this State, or some one of the United States, in contra-distinction to citizens of the Territories or District of Columbia and of the United States. Citizenship, in these cases, was considered a *jurisdictional fact,* necessary to be averred and to be proved on the part of the plaintiff. In deference to these decisions, Acts of Assembly were passed, from time to time, to enlarge the jurisdiction and extend the right, until it is made common to all persons, natural or artificial, who can sue in our Courts. *Vide* 1825, ch. 14; 1834, ch. 79; 1854, ch. 153.

The classes of persons *against whom* this right of attachment existed, continued up to 1854, ch. 153, (and at the date of the attachment in this cause,) to be regulated by the Acts of 1715, ch. 40, and 1795, ch. 56.

The attachment upon warrant, under the Act of 1795, ch. 56, cannot lawfully issue without an affidavit that the debtor "was not a citizen of the State, and not residing therein," or that, being a citizen, "he is actually runaway, absconding, or removed from his place of abode," &c. 1 *Gill,* 372. 3 *Gill,* 318, *Barr vs. Perry.* If it does not contain this averment, it is substantially defective, and the judgment of condemnation, upon appeal, will be reversed, and the attachment quashed. "To warrant the proceeding, the non-residence of the debtor is as essential as his indebtedness. It was because he was alleged to be a non-resident, that the defendant in error was enabled to obtain the attachment. If, then, it be true, as the garnishee alleges, that the debtor was a citizen of this State, and residing therein when the attachment was issued, then the proceeding was '*in fraudem legis.*'" * * * "Unless the

Court can superintend and control the writ by keeping it within the design and intent of the Act, it becomes an engine of great oppression and abuse." 3 *Gill*, 318.

In 6 *H. & J.*, 199, it was decided, attachments under the Act of 1750, ch. 40, would lie against foreigners, whether they have been residents of the State or not. It was admitted the Act is silent as to foreigners "*eo nomine*," but it was held to be prohibitory only as respects residents; and in the absence of such provision, contemporaneous construction had settled the practice so as to command respect, whatever would be the interpretation, if it was a "*vexata questio*." *Barney vs. Patterson*, 6 *H. & J.*, 199.

The word "citizen" has various meanings, viz: "A native of a city, an inhabitant who enjoys the freedom and privileges of the city in which he resides, an inhabitant, a dweller in any city, town or place; a person, native or naturalized, who enjoys the privilege of exercising the elective franchise, or holding real estate." *Webster's Dict'y, word citizen.* In which of these senses the word was used in the Act of 1795, ch. 56, does not appear from the cases above referred to. If the object of the law was, as some of the earlier cases indicate, an amelioration of the common law process, or the protection of our own citizens from summary process, as well as to give them a remedy against debtors residing out of the process of the Court, as others declare, the largest interpretation of the word would be most consonant to reason and justice, "*ubi eadem est ratio eadem est lex;*" hence citizen would be synonymous with "inhabitant or permanent resident" in a city or county, as all such are alike entitled to the most enlarged remedial process, and protection from summary proceedings, equally, with native or adopted citizens, enjoying the elective franchise, and the right of purchasing and holding real estate. This construction does not conflict with the provisions of 1715, ch. 40, but gives a cumulative remedy, adapted to the exi-

gencies of trade and commerce, which would be otherwise much embarrassed by the delays of the law.

Who is a citizen, in the purview of these Acts, is a mixed question of law and fact, to be found by the jury, under the direction of the Court, (*Union Bank vs. Kerr,* 7 *Md. Rep.,* 88,) and does not appear to have been decided in any of the cases preceding that of *Field vs. Adreon,* 7 *Md. Rep.,* 209. It does not appear from the report of that case that the case of 6 *H. & J.,* 191, was referred to. It was assumed, in the argument, that the Acts relating to attachments gave no right of attachment against a *resident* absconding, but only against a citizen absconding, and drawing from this assumption the deduction that if there was any right of attachment as against a resident absconding, it was only to be exercised against him as a non-resident of the State, for the reason that, *"eo instanti,"* a resident who is not a citizen absconds, he becomes a non-resident. Responding to this argument, the Court said: "This view of the subject might be unanswerable, if the attachment laws contemplated that a debtor should leave the State before he could be said to have absconded. But this argument is a *'non sequitur.'* A party may abscond, and subject himself to the operation of the attachment laws against absconding debtors, and still not depart from the limits of the State. In such a case, the party could not be said to be a non-resident of the State, and therefore could not be proceeded against by attachment, as such; and unless, under such circumstances, he could be treated as an absconding citizen, his case would not be covered by the attachment laws at all."

"Kennedy, the defendant in this case, it appears, was an unnaturalized Irishman, residing and doing business in Baltimore at the time he absconded, and the question for us to determine, is whether these circumstances are sufficient to constitute him a citizen in contemplation of our attachment laws, inasmuch as we have shown that he could

not be proceeded against as a non-resident debtor. It certainly never could have been the intention of our Legislature to have made such an invidious distinction in favor of foreign citizens residing in our State, over our own resident citizens, as to exempt the former from being proceeded against as absconding debtors, while the latter were to be held subject to all the penalties of the attachment laws, against debtors absconding to evade their creditors. We are of the opinion, that as the debtor was residing and doing business in Baltimore, he was, in contemplation of our attachment laws, *a citizen of this State*, and as such, having actually run away to avoid his creditors, was liable to be proceeded against as an absconding debtor. We do not wish to be understood as declaring that the debtor in this case was a citizen for every purpose and in every sense. A party may not be a citizen for political purposes, and yet be a citizen for commercial or business purposes."

If "residing and doing business in the State," constituted the defendant in that case, at the time he absconded, a citizen in contemplation of our attachment laws, not residing and not doing business in the State at the time of issuing the attachment in this, would necessarily bring the defendant within the opposite class of persons described in section 1, 1795, ch. 56, "as persons not being citizens of this State," &c., as well as within the spirit and scope of the law, and therefore liable to attachment on warrant. The case of *Adreon vs. Field*, like the case at bar, was instituted before and decided independently of, although subsequently to, the Act of 1854, ch. 153. That Act has been referred to as operating on this case. The enacting clause declares: "Every person who doth not reside in this State, and every person who absconds, may be made a defendant in an attachment;" adopting the more enlarged view of the process of attachment announced in the last decision. The repealing clause, which rescinds so much of the Act

of 1795, ch. 56, as relates to citizenship, (it was supposed,) gave immediate effect to the Act. This, as well as the enacting clause, is controlled by the 31st sec. of Art. 3 of the Constitution, which declares: "No law passed by the General Assembly shall take effect until the first of June next after the session at which it may have passed, unless it be otherwise expressly declared;" there being no express declaration in the Act when it should take effect, its operation was suspended until the 1st of June 1854, some twenty days after the attachment in this case was sued out, and did not affect pending cases. With this preliminary view of the law, we will proceed to examine the several exceptions.

The appellant's first exception is to the admissibility of the declarations of the defendant, Forwood. Without expressing any opinion upon the question of *res gestæ* argued at the bar, we are of opinion that this evidence was inadmissible on other grounds. These declarations were offered to show an "*animus revertendi*" in the defendant, at some indefinite period, which, according to the judicial interpretation affixed to the term "citizen" in the case above cited, could not affect the issue in this case, and they were therefore incompetent testimony. They were also offered to show that the defendant had not abandoned his home or domicil in Maryland. Under the ruling in *Adreon vs. Field*, the issue involved the actual, not constructive, residence or non-residence of the defendant, the "residing and doing business in the State."

Residence and domicil are sometimes distinct things. *In the matter of Thompson*, 1 *Wend.*, 43, it was decided that residence out of the State, for the purpose of being subject to foreign attachment, did not import that domicil should be out of the State also. 19 *Wend.*, 14, *Frost vs. Bresbin*. In *Haggart vs. Morgan*, 1 *Sel.*, 428, the defendant offered to prove that, at the time of taking out the attachment, he was not a non-resident, but a resident of the city of New York,

that he had been absent about three years, attending a law-suit at New Orleans, and returned in the Spring of 1848 ; the judge excluded the evidence, on the ground that the offer itself showed the debtor to be a non-resident, within the spirit of the Act. In the case at bar, the defendant had been absent four or five years, and *non constat*, but he might be absent as many years longer. The evidence being foreign to the issue, should have been excluded.

The 2nd and 3rd exceptions involve virtually the same questions. The appellee prayed the Court to instruct the jury, "That if they believe, from the evidence, that the said Forwood (the defendant debtor) had his home in Maryland, and left the State for temporary purposes, but with an intention to return to it, that such a change of place was not, of itself, in law, a change of domicil," which being granted, the appellant excepted, and then offered a counter instruction, negativing and qualifying the instruction granted by the Court, which being refused, he likewise excepted.

These exceptions present the same points considered upon the exception to the evidence, and turn entirely upon the matters previously discussed.

As an abstract legal proposition, upon an issue of domicil, the appellee's instruction was undoubtedly proper. Absence from one's domicil for a temporary purpose, attended with an *"animus revertendi,"* will not amount to a change of domicil. *Grier vs. O'Daniel,* 1 *Amer. Lead. Cases,* 747.

The subject of inquiry, however, being "commercial citizenship," residing and doing business in the State, the instruction granted had a tendency to mislead the jury, if granted without qualification ; and being so granted, and the counter instruction being refused, we think the Court

13      v.19

below erred on both exceptions, and the judgment should
be reversed and *procedendo* awarded.

*Judgment reversed and procedendo awarded.*

. (Decided December 3rd, 1862.)

